PEDRO QUILES RODRÍGUEZ, apelante y recurrido, *v.* SUPERIN-
TENDENTE DE LA POLICÍA, apelado y peticionario.

*Número:* CE-94-952          *Resuelto:* 2 de noviembre de 1995

*Carlos Lugo Fiol, Subprocurador General,* y *María Astrid Hernández Martín,* abogados de la parte peticionaria; *Nilka Marrero García* y *Ramón Crespo Nieves,* abogados de la parte recurrida.

PER CURIAM:

(En reconsideración)

La única cuestión que nos toca hoy resolver es si la norma que establecimos en *Díaz Martínez v. Policía de P.R.,* 134 D.P.R. 144 (1993), tiene o no efecto retroactivo. Veamos.

I

El *6 de noviembre de 1991* se formuló una querella contra Pedro Quiles Rodríguez, Agente de Investigación Auxiliar adscrito al Cuerpo de Investigaciones Criminales de Bayamón, por alegadamente haber desconectado, sin autorización de clase alguna, el sistema de energía eléctrica de la Casa Protegida Julia de Burgos, donde en ese momento se refugiaba su esposa, lo cual provocó la interrupción del servicio eléctrico en el lugar.

El mismo día se presentó contra éste una acusación por haber cometido una infracción al Art. 182 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4288: delito de sabotaje de servicios públicos esenciales. El *20 de noviembre de 1991,* un tribunal competente determinó causa probable para su arresto y le fijó una fianza que no pudo prestar, por lo que fue ingresado en la Penitenciaría Estatal.

El *19 de febrero de 1992*, un capitán de la Policía realizó una investigación administrativa sobre los sucesos antes relatados, que incluyó una entrevista con Quiles Rodríguez, quien se negó a declarar. Se concluyó que éste había cometido unos actos en violación al Reglamento de Personal de la Policía de Puerto Rico de 1981, por lo que el Superintendente de la Policía (en adelante Superintendente), mediante una comunicación escrita de *27 de febrero de 1992*, suspendió sumariamente a Quiles Rodríguez de empleo y de sueldo, efectivo desde el momento cuando la recibiera. En dicha misiva, además, le notificó acerca de los cargos que pesaban en su contra, le apercibió de su intención de expulsarlo del Cuerpo de la Policía y le advirtió de su derecho a solicitar una vista informal ante un Oficial Examinador dentro de los siguientes quince (15) días. Oportunamente, el agente Quiles solicitó la vista informal.

El *3 de mayo de 1993*, mediante una misiva recibida por el aquí recurrido el *15 de junio de 1993*, el Superintendente expulsó al agente Quiles de la Policía, retroactivo al 27 de febrero de 1992, fecha cuando se le notificó sobre su suspensión sumaria de empleo y de sueldo. Se le informó que, celebrada la correspondiente vista administrativa, habían quedado probadas las violaciones al Reglamento de Personal de la Policía de Puerto Rico de 1981 que le habían sido anunciadas con anterioridad. Se le notificó de su derecho de apelar ante la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.).

De dicha determinación, Quiles Rodríguez apeló el *30 de junio de 1993* ante la C.I.P.A. En esta ocasión, el apelante negó los hechos imputádoles como fundamento para el despido y alegó, además, que había sido privado de un debido proceso de ley toda vez que nunca se había celebrado una vista informal antes de su expulsión definitiva.

Pendiente este recurso ante la C.I.P.A., el *22 de julio de 1993* resolvimos el caso de *Díaz Martínez v. Policía de P.R.*, supra. Allí establecimos que, por imperativo constitucio-

nal, un empleado público de carrera tiene derecho a una vista informal previa a su *suspensión sumaria de sueldo*. A la luz de esta nueva norma jurisprudencial, el 11 de octubre de 1993 el apelante solicitó permiso para enmendar la apelación a los efectos de alegar que, al amparo de *Díaz Martínez v. Policía de P.R.*, supra, "la suspensión sumaria de empleo y sueldo fechada 27 de febrero de 1992, es nula en lo que se refiere a la suspensión del sueldo". Apéndice, pág. 69. En consecuencia, solicitó el pago del sueldo dejado de percibir desde el momento cuando se le suspendió sumariamente hasta la fecha de su expulsión definitiva o de su reinstalación.

A los fines de dilucidar la controversia fáctica sobre si se había celebrado o no la correspondiente vista informal antes de la expulsión definitiva de Quiles Rodríguez, la C.I.P.A. celebró unas vistas el 5 de noviembre y 15 de diciembre de 1993, y 8 de febrero de 1994. Luego de aquilatar la prueba desfilada, el 9 de febrero de 1994 la C.I.P.A. emitió una resolución interlocutoria, en la cual determinó que al apelante se le había dado "amplia oportunidad de una vista informal por la autoridad nominadora".[1] El apelante solicitó una reconsideración, que fue declarada sin lugar.

Inconforme, Quiles Rodríguez acudió al Tribunal Superior mediante un recurso de revisión presentado el 28 de marzo de 1994. En éste, el apelante le solicitó al tribunal

---

[1] La Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.) hizo las determinaciones de hecho siguientes: (1) la vista informal fue señalada en tres (3) ocasiones, que fueron suspendidas por la incomparecencia del abogado del apelante; (2) el primer abogado, luego de su incomparecencia, renunció a la representación legal del apelante al alegar falta de interés del cliente; (3) señalada por cuarta ocasión, tampoco se celebró porque la representación legal del apelante se comunicó telefónicamente con el Oficial Examinador para someter el caso por el expediente; (4) el abogado del apelante solicitó y obtuvo un período de treinta (30) días para someter un escrito; (5) este nuevo abogado solicitó una prórroga que le fue concedida, no obstante lo cual, nunca sometió el escrito; (6) estudiado el expediente, el Oficial Examinador recomendó confirmar la sanción, y (7) el abogado del apelante negó en la vista ante la C.I.P.A. que hubiese accedido a someter el caso por el expediente; asimismo, negó que la firma que aparecía en la carta que solicitaba la prórroga, en papel timbrado de su oficina, fuera la suya. La C.I.P.A., sin embargo, "le da entero crédito al oficial examinador".

que, al amparo de *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), y *Díaz Martínez v. Policía de P.R.*, supra: (1) revocara la determinación de la C.I.P.A.; (2) anulara todos los procedimientos disciplinarios en su contra; (3) ordenara el pago de los sueldos que dejó de percibir desde la fecha de su suspensión sumaria de empleo y de sueldo, y (4) ordenara su reinstalación en el empleo.

El foro de instancia emitió una orden dirigida a la parte apelada para que mostrara causa de por qué "examinada la decisión en el caso de *Díaz Martínez v. Policía de Puerto Rico*, ... no se deb[ía] revocar la decisión de la C.I.P.A.". Apéndice, pág. 108. El Superintendente compareció para solicitar la desestimación del recurso bajo el fundamento de que el tribunal carecía de jurisdicción para atender las revisiones de resoluciones de carácter interlocutorio. Así las cosas, el 5 de octubre de 1994, el tribunal a quo dictó una sentencia revocatoria de la resolución de la C.I.P.A., bajo el fundamento de que la suspensión de empleo y de sueldo sin vista previa era contraria a la doctrina establecida en *Díaz Martínez v. Policía de P.R.* supra.

El Superintendente solicitó la reconsideración. El tribunal de instancia la acogió y emitió una resolución en la cual determinó que el planteamiento del apelado, referente a la aplicación prospectiva de *Díaz Martínez v. Policía de P.R.*, supra, carecía de fundamentos.

De dicha determinación, el Superintendente acudió ante nos para argumentar, en esencia, que la norma de *Díaz Martínez v. Policía de P.R.*, supra, no puede aplicarse de forma retroactiva. El 14 de marzo de 1995 denegamos el recurso de *certiorari*. Presentada la solicitud de reconsideración correspondiente, el 28 de abril de 1995, por decisión unánime, le concedimos un término al aquí recurrido para que compareciera y mostrara causa por la cual no debíamos reconsiderar nuestro dictamen previo y revocar la sentencia recurrida. En atención a lo ordenado, Quiles Rodríguez compareció. Resolvemos según intimado.

## II

Una decisión judicial puede tener tanto efecto retroactivo como prospectivo. Esto por razón de que "la absoluta retroactividad sería la muerte de la seguridad y la ... confianza pública, y la absoluta irretroactividad sería la muerte del desenvolvimiento del derecho". R. Calderón Jiménez, *Retroactividad o prospectividad de las decisiones de los tribunales*, 53 (Núms. 2–3) Rev. C. Abo. P.R. 107, 115 (1992).

█ Hemos establecido ya que son los tribunales mismos los llamados a determinar si una decisión judicial se aplicará o no de manera retroactiva. En el ejercicio de esta discreción, son fundamentales las consideraciones de política pública y orden social, puesto que nuestro norte debe ser "conceder remedios justos y equitativos que respondan a la mejor convivencia social". *Gorbea Vallés v. Registrador*, 131 D.P.R. 10 (1992).

█ Anteriormente hemos reconocido como criterios rectores al momento de declarar la retroactividad o prospectividad de una norma jurisprudencial, los siguientes: (1) el propósito que persigue la nueva regla a los fines de determinar si su retroactividad lo adelanta; (2) la confianza que se depositó en la antigua norma, y (3) el efecto de la nueva regla en la administración de la justicia. Ello no obstante, la última determinación descansará en las consideraciones de índole social, a la luz de los hechos y las circunstancias particulares de cada caso. *Gorbea Vallés v. Registrador*, supra; *Pueblo v. Báez Cintrón*, 102 D.P.R. 30 (1974); *Pueblo v. Cruz Jiménez*, 99 D.P.R. 565 (1971).

## III

█ En *Díaz Martínez v. Policía de P.R.*, supra, pág. 153, dijimos que

... los casos donde la continuidad en el empleo crea una situación peligrosa para el Estado o los intereses protegidos por el Gobierno, se puede suspender sumariamente de empleo a un empleado público sin la celebración de vista previa, siempre que continúe recibiendo el sueldo y se le ofrezca —en un término razonable de tiempo— una oportunidad de ser oído en una vista informal o en una en la cual se adjudique la controversia.

■ Cónsono con lo anterior, establecimos que un policía —empleado de carrera de la uniformada— es privado de su propiedad sin el debido proceso de ley cuando se le suspende sumariamente de sueldo sin darle antes la oportunidad de ser oído en una vista informal, que sea celebrada dentro de un término razonable de tiempo. *Se ordenó el pago de los salarios y beneficios dejados de percibir desde la fecha de la suspensión sumaria de sueldo hasta la fecha de la expulsión definitiva.*

El Superintendente acepta que el estado de derecho actual exige, en un caso como el de marras, la celebración de una vista informal previa a la suspensión sumaria de *sueldo.* Sin embargo, argumenta en su alegato ante nos que el tribunal de instancia erró al aplicar de forma retroactiva la norma aludida a este caso porque en el momento cuando el agente Quiles cometió los hechos que impulsaron el proceso administrativo en su contra, así como al momento cuando se le suspendió y se le expulsó, e incluso en el tiempo que interpuso la apelación, otro era el estado de derecho vigente. De acuerdo con el derecho positivo de aquel entonces, el peticionario plantea que se actuó conforme a derecho y se cumplieron todos los requisitos que la ley y los reglamentos aplicables imponían, brindándole al aquí recurrido todas las garantías procesales que exigía el debido proceso de ley en aquel entonces. El Superintendente tiene razón.

■ Antes de *Díaz Martínez v. Policía de P.R.*, supra, ni la Ley de Personal del Servicio Público de Puerto Rico ni la de la Policía o sus reglamentos requerían que se le pro-

veyera a un policía la oportunidad de ser oído en una vista informal antes de una suspensión sumaria de empleo y sueldo. En ese entonces, se exigía la celebración de la vista informal únicamente antes del *despido* del empleado público de carrera; así se buscaba evitar que la agencia administrativa tomara con carácter definitivo una decisión errónea. *Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990). Así, habíamos dicho en *Torres Solano v. P.R.T.C.*, supra, que la vista informal servía como escrutinio mínimo inicial para determinar si existía una justificación razonable para creer que los cargos contra el empleado eran ciertos y que el *despido* estaba justificado.

En el caso de marras, no está en controversia que a Quiles Rodríguez se le brindó la oportunidad de ser oído antes de su expulsión definitiva del Cuerpo de la Policía. Así lo encontró probado la C.I.P.A. Nótese, además, que el Superintendente lo había suspendido apoyado en una investigación administrativa y en la simultánea determinación judicial de causa probable por el delito de sabotaje. En ambos procedimientos se le informó de los cargos que pesaban en su contra y se le dio oportunidad para defenderse.

No hay razón alguna para creer que de haber estado en vigor la norma de *Díaz Martínez v. Policía de P.R.*, supra, en aquel entonces, no se le hubiera concedido a Quiles Rodríguez la vista informal antes de suspenderlo sumariamente de sueldo.

Nos parece, además, sumamente convincente el argumento del Superintendente de que aplicar la norma en cuestión de forma retroactiva "causa[ría] un grave menoscabo de los recursos económicos de la Policía", toda vez que se tendría que ordenar la reinstalación de una "cantidad sustancial de policías que fueron suspendidos sumariamente al igual que el recurrente" (Petición de *certiorari*, pág. 17) antes de que se decidiera *Díaz Martínez v. Policía de P.R.*, supra. Precisa advertir, empero, que antes de expulsar a estos policías se les dio la oportunidad de ser oídos

en una vista informal, en la cual quedaron probados los cargos en su contra. Ciertamente, aplicar de forma retroactiva la norma en cuestión significaría la erogación sustancial de los limitados fondos públicos de la Policía de Puerto Rico, "quien se ver[ía] obligad[a] a pagar los salarios dejados de percibir por funcionarios que deshonraron su uniforme y la encomienda que les dio el Pueblo de Puerto Rico y tuvieron que ser suspendidos de empleo y sueldo precisamente para garantizar la seguridad y bienestar de la ciudadanía que venían obligados a salvaguardar, bajo un procedimiento que la Policía entendía era correcto". Solicitud de reconsideración del peticionario, págs. 5–6.

En resumen, pues, la dirección de la Policía había actuado, en casos como el de marras, confiando en el estado de derecho vigente. Tramitó numerosos casos según las leyes, los reglamentos y la jurisprudencia vigente lo requerían. Darle efecto retroactivo a casos que se decidieron administrativamente antes de nuestra decisión en *Díaz Martínez v. Policía de P.R.*, supra, menoscabaría seriamente los recursos de la Policía, que tanto se necesitan para proteger a la comunidad. Se tendrían que destinar cuantiosos fondos públicos para pagar de forma retroactiva numerosos salarios y obvenciones a agentes suspendidos, por el período de la suspensión, aunque dichos agentes no rindieron servicios durante ese tiempo. Por otro lado, darle efecto prospectivo a *Díaz Martínez v. Policía de P.R.*, supra, no tendrá efectos más adversos sobre los afectados, ya que tuvieron ocasiones bajo el régimen vigente entonces para dilucidar los hechos y presentar la defensa antes de sus suspensiones. En consideración a lo anterior, resolvemos hoy que la norma establecida en *Díaz Martínez v. Policía de P.R.*, supra, sólo tiene efecto prospectivo.

Fijada la prospectividad de la norma en cuestión por los fundamentos antes expuestos, *se dicta sentencia para revocar la del Tribunal Superior, Sala de San Juan.*

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señores Negrón García y Fuster Berlingeri emitieron unas opiniones separadas de conformidad. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unieron el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón.

— O —

Opinión de conformidad del Juez Asociado Señor Negrón García.

(En reconsideración)[1]

I

Contra el policía Pedro Quiles Rodríguez se formuló una querella en la cual se alegó que el 6 de noviembre de 1991 fue a la Casa Protegida Julia de Burgos y, sin autorización alguna, desconectó e interrumpió totalmente el sistema de energía eléctrica de dicha institución. El caso fue investigado, y el 20 de noviembre un juez determinó causa probable para su arresto por el delito de sabotaje. Art. 182 del Código Penal, 33 L.P.R.A. sec. 4288. Al no prestar la fianza impuéstale de cinco mil dólares ($5,000), Quiles Rodríguez fue ingresado en la Penitenciaría Estatal.

A consecuencia de dicho incidente y del trámite judicial, el Comandante de Área de San Juan, mediante Memorando de 22 de noviembre de 1991, solicitó la suspensión sumaria de Quiles. A esa fecha continuaba preso.

Así las cosas, se inició la *investigación administrativa* dentro de la Policía. Quiles Rodríguez fue citado y compa-

---

[1] La Resolución denegatoria del *certiorari* de 14 de marzo de 1995 no gozó originalmente de la conformidad de los Jueces Asociados Señores Rebollo López, Fuster Berlingeri y del que suscribe, quienes hubiésemos expedido.

reció el 19 de febrero de 1992 ante el Capitán Rafael Rivera, Oficial Investigador de la Superintendencia Auxiliar en Inspección y Asuntos Disciplinarios. En esa ocasión, dicho oficial le informó *de manera específica los hechos que se le imputaban,* la presentación de la querella y el trámite judicial criminal pendiente, y de su derecho a no declarar y a estar asistido de un abogado. Quiles Rodríguez, *bajo juramento,* admitió entender la investigación administrativa que se practicaba y conocer sus derechos, negó los hechos imputádosle y, por instrucciones de su abogado Lcdo. Ramón Andino Nevárez, *decidió no declarar* "en esta *etapa de la investigación* por el momento, hasta tanto *se vea el juicio en su fondo* [del caso criminal]". (Énfasis suplido.) Apéndice, pág. 112.

Ante su negativa a declarar, y descartada la posibilidad del Capitán Rivera de poder conocer la versión de los hechos por voz de Quiles Rodríguez, el *27 de febrero* —ocho (8) días después— el *Superintendente de la Policía* lo suspendió *de empleo y sueldo. Se fundó en los hechos originalmente relatados. Le comunicó, además, su intención de expulsarlo de la Policía* y le advirtió de su derecho a solicitar una *vista informal* ante un Oficial Examinador dentro de los siguientes quince (15) días laborables. Esta notificación fue recibida por Quiles Rodríguez el 3 de marzo, quien dos (2) días más tarde solicitó la vista referida.

*Dicha vista fue señalada y pospuesta en cuatro (4) ocasiones por la reiterada incomparecencia de los abogados contratados por Quiles Rodríguez*; ello ocurrió durante un período que se extendió por *más* de siete (7) meses.

Finalmente, el 14 de octubre, su último representante legal —quien tampoco compareció— comunicó telefónicamente al Oficial Examinador que sometía el caso por el "expediente", y solicitó treinta (30) días para presentar un escrito. Aun cuando después se le concedió una prórroga, nunca lo presentó. Resolución interlocutoria, Apéndice, pág. 33. Transcurrido todo ese tiempo, el Oficial Examina-

dor rindió un informe que recomendaba la expulsión. Por lo tanto, Quiles Rodríguez fue expulsado el 15 de junio de 1993.

No conforme, Quiles Rodríguez acudió ante la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.) para alegar, en síntesis, que su suspensión de empleo y de sueldo no estuvo sujeta a las normas constitucionales aplicables por no haber estado precedida de vista alguna.

Tras aquilatar la prueba documental y testifical presentada, la C.I.P.A. interlocutoriamente declaró sin lugar el planteamiento. Debido a los múltiples señalamientos y suspensiones, dicho organismo concluyó que la autoridad nominadora había cumplido con el requisito de la vista informal. Denegada la reconsideración, Quiles Rodríguez acudió en revisión al Tribunal Superior, Sala de San Juan. El Superintendente solicitó la desestimación del recurso por considerar que dicho foro carecía de jurisdicción. Adujo que la resolución recurrida era de carácter interlocutorio, no revisable, según la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*).

En atención a los argumentos de las partes, el ilustrado foro de instancia (Hon. Antonio J. Amadeo Murga, Juez) revocó al concluir que:

> ... La C.I.P.A. erró al resolver que el recurrente no tenía razón en su alegación de que fue privado de sus derechos al ser suspendido de empleo y sueldo sin vista previa. *Aunque a la luz de los hechos de violencia imputados al recurrente*, se podía justificar una suspensión de empleo sin vista previa, la doctrina establecida en *Cleveland Board of Education* v. *Loudermill*, 470 U[.S.] 532 (1985), según explicada por nuestro Tribunal Supremo dentro del contexto de medidas disciplinarias contra miembros de la Policía de Puerto Rico, exige vista previa en casos en que al empleado se le suspende además de sueldo. En este caso la suspensión de empleo y sueldo fue hecha sin vista previa y por ende claramente contraria a la doctrina constitu-

cional expuesta en *Loudermill*, supra, según se aplicó a los miembros de la Policía de Puerto Rico en *Díaz Martínez [v. Policía de P.R.*, 134 D.P.R. 144 (1993)]. (Énfasis en el original suprimido y énfasis suplido.) Apéndice, pág. 4.]

Además, le impuso a la parte apelada una sanción económica por entender que el planteamiento de índole jurisdiccional era frívolo. El Superintendente solicitó la reconsideración. Alegó, en síntesis, un error en la sanción y que debía aplicar retroactivamente la decisión de *Díaz Martínez v. Policía de P.R.*, supra. Aunque el tribunal reiteró su dictamen, eliminó la sanción.

El Superintendente acudió ante nos para insistir en que el foro de instancia incidió al asumir jurisdicción sobre una *orden interlocutoria* de la C.I.P.A. y, además, al cuestionar la aplicación retroactiva de *Díaz Martínez v. Policía de P.R.*, supra.

## II

Por interacción armoniosa de las Secs. 4.2([2]) y 3.15([3]) de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. secs. 2172 y 2165, el tribunal de instancia tenía facultad para asumir la jurisdicción y revisar al organismo administrativo (la C.I.P.A.).

---

([2]) Dispone, en lo pertinente:

"Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal Superior con competencia dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo." 3 L.P.R.A. sec. 2172.

([3]) Dispone lo siguiente:

"La parte adversamente afectada por una resolución, u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado

Aclarado este extremo, coincidimos en que independientemente de nuestro disentir en *Díaz Martínez v. Policía de P.R.*, supra, la norma mayoritaria debe tener *vigencia prospectiva*, máxime en las circunstancias particulares aquí involucradas. Nos explicamos.

Es un dato no contradicho que se pautó y señaló una *vista informal* que no pudo celebrarse porque el policía Quiles Rodríguez simple y llanamente —por razones de estrategia forense— desde el primer momento optó por permanecer callado y no "decir su versión de los hechos".

¿Cómo puede armonizarse esa conducta acomodaticia con el laudable propósito de la vista informal, cuyo propósito es reducir los peligros de que se prive al empleado erróneamente del interés propietario?

Al igual que sostuvimos en nuestro disentir en *Díaz Martínez v. Policía de P.R.*, supra, pág. 158, el policía Quiles Rodríguez "conocía los hechos imputados, pudo muy bien dar su versión y no lo hizo. ¿De qué se queja? ¿Se le violó realmente el debido proceso de ley? Es improcedente e injusto reconocerle el pago retroactivo de salarios y beneficios".

---

dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de losquince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción cuya resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción. Si la agencia dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los noventa (90) días de haber sido radicada una moción acogida para resolución, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que el tribunal, por justa causa, autorice a la agencia una prórroga para resolver, por un término razonable.

"La moción de reconsideración será jurisdiccional para poder solicitar la revisión judicial." 3 L.P.R.A. sec. 2165.

## — O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri.

Estoy conforme con la opinión *per curiam* emitida por el Tribunal en este caso. Comparto a plenitud tanto el resultado al que llega la mayoría como los fundamentos que se formulan en ésta. El Superintendente de la Policía suspendió al agente Quiles observando con rigurosidad el derecho vigente entonces. Tal acción del Superintendente respondió a la necesidad de preservar la integridad del Cuerpo policíaco, en vista de que Quiles estaba acusado de haber abusado gravemente de las prerrogativas de su cargo. No hay ningún interés público importante que requiera favorecer a Quiles y darle *retroactivamente* el beneficio de lo resuelto por una exigua mayoría de este Tribunal en *Díaz Martínez v. Policía de P.R.*, 134 D.P.R. 144 (1993). Por el contrario, ya que existe una cantidad sustancial de policías que fueron suspendidos de modo similar antes de la decisión de *Díaz Martínez v. Policía de P.R.*, supra, sería detrimental para el país darle un efecto retroactivo a tal decisión. Particularmente, en estos momentos, cuando estamos sufriendo los estragos de una ola criminal que nos azota de modo inclemente, es cuando la Policía necesita de todos los recursos disponibles para combatir con efectividad este grave mal social. Darle efecto retroactivo a dicha decisión significaría que la Policía tendría que gastar cuantiosos fondos públicos en pagar numerosos salarios y obvenciones a los agentes referidos, por el período de su suspensión, aunque dichos agentes fueron suspendidos de empleo conforme al derecho vigente y durante el tiempo de la suspensión, no rindieron servicios. Tales fondos estarían mejor usados en la lucha contra el crimen.

Aprovecho la ocasión, sin embargo, para reiterar los pronunciamientos que hiciera en mi disidencia en el caso *Díaz Martínez v. Policía de P.R.*, supra, y abundar en ellos,

para que no pueda malinterpretarse cuál es exactamente mi posición sobre este asunto.

Para comenzar, debe notarse que tratamos en el de autos, como en *Díaz Martínez v. Policía de P.R.*, supra, con casos relativos a la *Policía*. No estamos examinando aquí cuáles deben ser las normas pertinentes para todas las personas en el servicio público en general, sino aquellas que concretamente tienen que ver con agentes del orden público.

En segundo lugar, también debe notarse que las situaciones en cuestión se tratan de *abusos intolerables de las prerrogativas del cargo*. No estamos examinando aquí meras violaciones de alguna norma ordinaria de un reglamento de personal en el servicio público. Nuestro examen no gira en torno a faltas comunes, como podrían ser las de ausentarse del empleo, negligencia en el desempeño de las labores del cargo, desacatar las directrices de los superiores y otras de similar naturaleza. Lo que nos concierne aquí son actos que no sólo violan las normas laborables aplicables sino que, además, constituyen una conducta criminal grave.

Las dos distinciones formuladas sucintamente en los párrafos anteriores son medulares a la postura normativa que sostenemos. Conocido es que las normas relativas al debido proceso de ley, en el ámbito que aquí nos concierne, presuponen sopesar los intereses públicos frente a los de las personas afectadas por la acción estatal contemplada. *Mientras mayor sea el interés estatal, mayor será lo que se le permite hacer al Estado. United States v. Good Real Property*, 510 U.S. 43 (1993); *Zinermon v. Burch*, 494 U.S. 113 (1990); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985); *Mathews v. Eldridge*, 424 U.S. 319 (1976). Se trata de la consabida naturaleza circunstancial del debido proceso de ley. *Connecticut v. Doehr*, 501 U.S. 1 (1991); *Pueblo v. Andreu González*, 105 D.P.R. 315 (1976); *Domínguez Talavera v. Tribunal Superior*, 102 D.P.R. 423 (1974).

En los casos en cuestión, existe *un interés público pre-eminente* por atender expeditamente la situación del *policía agresor*. Se trata de funcionarios que están autorizados a ejercer precisamente el más sensitivo de los poderes del Estado: el del uso de la fuerza —incluso el de las armas mortíferas— para mantener la seguridad y el orden públicos. Cuando un agente policíaco abusa de estas prerrogativas tan especiales, no sólo viola gravemente los deberes de su cargo sino que, además, incurre en *un peligroso vejamen contra la autoridad misma del Estado*. Su comportamiento convierte en cruda violencia el uso de la fuerza oficial. En el instante en que un oficial policíaco comete un acto criminal, la máxima autoridad que el pueblo ha delegado al Gobierno se distorsiona drásticamente, para convertirse en el más injurioso atropello que se puede cometer contra un ciudadano. El respeto de la gente por el orden público y su apoyo a la autoridad del Estado quedan en grave riesgo de perderse si no se actúa rápida y rigurosamente contra el policía agresor. Así lo hemos reconocido expresamente antes, al señalar que "cuando so color de autoridad un policía comete actos criminales ... se desvanece por completo [la] confianza pública", dictamen que emitimos precisamente en una decisión nuestra, en la cual resolvimos que el Estado responde en daños y perjuicios cuando no toma las medidas necesarias *"para supervisar de manera estricta"* o *"disciplinar"* a policías susceptibles de cometer actos criminales. *Leyva et al. v. Aristud et al.*, 132 D.P.R. 489, 512 (1993). Fueron estas consideraciones fundamentales, y mi criterio de que el Superintendente había cumplido adecuadamente con lo que requiere el debido proceso de ley, lo que motivó mi disenso en *Díaz Martínez v. Polía de P.R.*, supra.

En aquella ocasión, en atención a unos hechos similares a los del caso de autos, concluí que no hubo violación al debido proceso de ley, puesto que al momento de la suspen-

sión sumaria de empleo y de sueldo del agente en cuestión, "había mediado una acusación formal por varios delitos ... existía una determinación judicial de causa probable respecto a la acusación, [emitida luego de la vista correspondiente], y [además,] se había celebrado una investigación administrativa sobre el incidente delictuoso, durante la cual el policía estuvo acompañado por un abogado, se le explicó en detalles el propósito de ésta, se le advirtió acerca de las posibles consecuencias, y se le dio la oportunidad de expresar su versión y justificación del incidente, cosa que el policía se negó a hacer". *Díaz Martínez v. Policía de P.R.*, supra, pág. 159. Para mí era evidente que se había cumplido a cabalidad con las exigencias auténticas del debido proceso de ley, según formuladas por el Tribunal Supremo de Estados Unidos en *Cleveland Bd. of Ed. v. Loudermill*, supra.

En el caso que nos ocupa, de modo análogo, al momento de suspender sumariamente de empleo y de sueldo a Quiles Rodríguez por las imputadas infracciones al Reglamento de Personal de la Policía de Puerto Rico de 1981, no hubo violación alguna al debido procedimiento de ley. Haciendo hincapié en las circunstancias particulares ante nos, adviértase que desde el inicio del proceso, la Policía investigó los hechos imputádoles a Quiles Rodríguez y lo citó para darle la oportunidad de defenderse. Entonces, Quiles tomó la decisión informada de no cooperar con la investigación y de no dar su versión de los hechos. Con ello se negó a sí mismo la oportunidad de ser oído antes de ser suspendido. Nótese, además, que la investigación administrativa realizada por la Policía fue provocada por el hecho de que el agente se encontraba *encarcelado*. Ello debido a que, luego de la correspondiente investigación por funcionarios del Ministerio Público, se había presentado una acusación formal en su contra por la imputada comisión del delito de sabotaje de servicios públicos esenciales, y un

tribunal competente, luego de la vista correspondiente, había determinado causa probable para su arresto y le fijó una fianza que el agente no pudo prestar.

Surge palmariamente de lo anterior, que a Quiles Rodríguez se le brindó el debido proceso de ley antes de su suspensión sumaria. Se cumplió aun hasta con los requisitos fijados por el Tribunal Supremo de Estados Unidos en *Cleveland Bd. of Ed. v. Loudermill*, supra, para situaciones de *despido* sumario, en las cuales los derechos procesales del empleado público son evidentemente de más alcance que los que éste tiene en casos de *suspensión* de empleo, como es el caso de autos. En *Cleveland Bd. of Ed. v. Loudermill*, supra, pág. 547, el máximo foro judicial federal expresamente resolvió que:

> We conclude that all the process that is due is provided by a *pretermination opportunity to respond....* (Énfasis suplido.)

Es decir, lo que el propio Tribunal Supremo federal antes había definido en la siguiente manera,

> ...[h]ere, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.
> [1e] The essential requirements of due process, ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. ... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. ... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee. (Citas omitidas.) Íd., págs. 545–546.

En el caso del agente Quiles, previo a su suspensión, se le notificó de los cargos que pesaban en su contra y se le dio la oportunidad de defenderse. Además, se investigó de

modo preliminar la querella en su contra tanto de forma administrativa como judicial, en grado suficiente como para asegurar que existía una justificación razonable para creer que los cargos contra el agente eran ciertos. Se había realizado con claridad el *escrutinio mínimo inicial* que constitucionalmente se tiene que llevar a cabo y que es la razón por la cual de otro modo debe celebrarse una vista *informal* previo a la suspensión. Insistir en que aun en estas circunstancias se debió celebrar tal vista, como algunos lo hacen, es reducir las normas jurídicas a una aplicación mecánica, sin considerar sus propósitos ni su razón de ser. Ciertamente, en este caso se había despejado la posibilidad de que la Superintendencia de la Policía tomara una decisión arbitraria. Pretender la aplicación retroactiva aquí de la desacertada norma de *Díaz Martínez v. Policía de P.R.*, supra, sólo significaría multiplicar nuestro anterior dislate, a un costo social más grave. En estos casos de policías lícitamente suspendidos por abusar de las prerrogativas de sus cargos, estaríamos causando un dispendio innecesario de fondos públicos, *en el pago de salarios y obvenciones por servicios que no fueron rendidos.* Es menester enfatizar que *no es el costo que conlleva la celebración de una vista informal lo que nos preocupa.* Cuando tales vistas son auténticamente necesarias para proteger derechos constitucionales, deben celebrarse no importa lo que cuesten en términos monetarios. Más bien, lo que nos inquieta es la insistencia de algunos en que se paguen *retroactivamente* unas compensaciones a quienes no las merecen, porque no trabajaron para ellas, ya que estaban válidamente suspendidos de su empleo, conforme a las normas verdaderas de debido proceso de ley. Lo que alarma sobre todo es que se invoquen nociones erróneas del Derecho para premiar a los que faltaron a su deber, compensándoles incluso mientras estuvieron legalmente encarcelados. No comparto esa visión tan extravagante y superflua de nuestra facultad para diseñar supuestos re-

medios judiciales. En fin, me parece que nuestro dictamen ahora, aplicando a *Díaz Martínez v. Policía de P.R.*, supra, sólo prospectivamente, aminora sus excesos.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unen el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón.

Por entender que, al momento de ser suspendido, al recurrido Quiles Rodríguez le cobijaba el derecho a la vista informal previa que garantiza el debido proceso de ley y, por lo tanto, no podía privársele de su salario sin antes celebrar ésta, disentimos. Este derecho de los empleados públicos fue expresamente reconocido por el Tribunal Supremo federal en *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), y en la fecha cuando Quiles Rodríguez fue suspendido sumariamente todavía esta Curia no había adoptado la excepción a la exigencia de una vista previa para los casos en que la retención del empleado podría constituir un peligro para la seguridad de otras personas.

Como esta excepción fue adoptada en 1993 en *Díaz Martínez v. Policía de P.R.*, 134 D.P.R. 144 (1993), hasta esa fecha la Policía tenía que cumplir estrictamente con la norma aprobada por el Tribunal Supremo federal en los casos de suspensión de empleo y de sueldo de los empleados públicos. Es a partir de julio de 1993 cuando, por vía de excepción, hemos permitido que un policía pueda ser suspendido sumariamente de empleo, pero no de sueldo, sin la celebración de una vista informal previa, cuando el Superintendente considere que su continuidad en el empleo constituya un peligro significativo a la seguridad de otras personas.

I

Contra el recurrido Pedro Quiles Rodríguez se presentó una denuncia por violación al Art. 182 del Código Penal, 33 L.P.R.A. sec. 4288: sabotaje de servicios públicos esenciales. Según la querella, el 6 de noviembre de 1991 Quiles Rodríguez acudió a las facilidades de la Casa Protegida Julia de Burgos y desconectó el servicio de energía eléctrica de dicho lugar. El 20 de noviembre un tribunal determinó causa probable para arresto contra Quiles Rodríguez por el delito imputado. Al momento de los hechos, el aquí recurrido era agente del orden público adscrito al Cuerpo de Investigación Criminal (C.I.C.) y empleado público de carrera.

Con motivo de lo anterior, el Comandante de Área de San Juan solicitó la suspensión sumaria de Quiles Rodríguez. El 27 de febrero de 1992, el Superintendente de la Policía (en adelante el Superintendente) suspendió sumariamente de empleo y de sueldo a Quiles Rodríguez por violaciones al reglamento de ese Cuerpo. Le notificó acerca de los cargos en su contra, de la intención de expulsarlo de la Policía y le advirtió de su derecho a solicitar una vista informal ante un Oficial Examinador en el término de quince (15) días laborables. De convertirse en final el castigo, tendría derecho a apelar ante la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.).

La referida vista informal fue solicitada por Quiles Rodríguez, aunque ésta nunca se celebró por causas imputables al mismo empleado. El 1ro de diciembre de 1992, el Oficial Examinador dio el caso por sometido y recomendó la expulsión.

El 15 de junio de 1993, Quiles Rodríguez recibió una comunicación del Superintendente de 3 de mayo en la cual le comunicaba su expulsión de la Policía, retroactivo al 27 de febrero de 1992. El 30 de junio de 1993, Quiles hizo uso de su derecho a apelar ante la C.I.P.A. Allí negó los hechos

imputádoles y alegó haber sido privado del debido proceso de ley, pues no se celebró una vista informal antes de su expulsión definitiva. Pendiente la apelación ante la C.I.P.A., el 22 de julio de 1993 se resolvió *Díaz Martínez v. Policía de P.R.*, supra, en el cual se reconoció que un policía podía ser suspendido, sumariamente y sin vista previa, de empleo, mas no de sueldo. El 11 de octubre, Quiles Rodríguez solicitó permiso para enmendar la apelación y alegar, al amparo de *Díaz Martínez*, que su suspensión sumaria de sueldo era nula. Solicitó el pago del sueldo dejado de percibir desde la suspensión sumaria hasta la fecha de su expulsión definitiva o reinstalación.

El 9 de febrero de 1994, la C.I.P.A. emitió una resolución para determinar que se había dado una amplia oportunidad de una vista informal a Quiles Rodríguez antes de su expulsión. De las determinaciones de hecho de la C.I.P.A. se desprende una falta de diligencia e interés por parte de Quiles Rodríguez en tramitar su apelación ante dicho organismo. Una solicitud de reconsideración fue denegada.

Quiles Rodríguez acudió en revisión al Tribunal Superior y solicitó: (1) la revocación de la determinación de la C.I.P.A.; (2) la anulación de todos los procedimientos disciplinarios en su contra; (3) la restitución de los sueldos dejados de percibir, y (4) su reinstalación en el empleo. El Superintendente solicitó la desestimación del recurso al alegar que el tribunal carecía de jurisdicción para atender las revisiones de carácter interlocutorio. El foro de instancia revocó la resolución de la C.I.P.A. bajo el fundamento de que "la suspensión de empleo y sueldo sin vista era contraria a la doctrina establecida en *Díaz Martínez*". A tales efectos, ordenó que se le pagara a Quiles Rodríguez los sueldos dejados de percibir desde su suspensión hasta que fuera reinstalado o expulsado de la Policía. En reconsideración, el Superintendente alegó que *Díaz Martínez v. Policía de P.R.*, supra, no debía tener aplicación retroactiva. El tribunal sostuvo su decisión.

El Superintendente acudió ante este Tribunal en recurso de *certiorari*, cuya expedición denegamos el 14 de marzo de 1995. Posteriormente acogimos una solicitud de reconsideración presentada por el recurrente. En ésta, sostiene que *Díaz Martínez v. Policía de P.R.*, supra, no debe tener aplicación retroactiva, pues al momento de ser suspendido Quiles Rodríguez, el Superintendente siguió un proceso administrativo que entendía que cumplía con la doctrina de *Cleveland Bd. of Ed. v. Loudermill*, supra.

## II

A.  Nuestra Constitución dispone en su Art. II, Sec. 7, que "[n]inguna persona será privada de su propiedad o libertad sin el debido proceso de ley". Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 275. La garantía del debido proceso de ley opera en dos (2) modalidades: la procesal y la sustantiva. Mientras la sustantiva procura la protección y salvaguarda de los derechos fundamentales de la persona, la vertiente procesal exige un procedimiento justo y equitativo al momento del Estado intervenir con el interés propietario o de libertad de las personas. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992). No todo interés, sin embargo, merece la protección constitucional. La existencia de un interés propietario debe descansar en un derecho concreto reconocido bajo nuestro ordenamiento jurídico. *C.E.S. U.P.R. v. Gobernador*, 137 D.P.R. 83 (1994), opinión concurrente.

Una vez se determina que existe un interés propietario, procede examinar cuáles son la exigencias que el debido proceso de ley impone al Estado. *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 274 (1987). Si bien la característica medular es que el procedimiento debe ser justo, a través de la jurisprudencia normativa se han identificado componentes básicos de todo debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser

escuchado y de defenderse. En ese contexto es preciso recordar que nuestra cláusula del debido proceso de ley encuentra su homóloga en la garantía reconocida en las Enmiendas V y XIV de la Constitución federal. Íd., pág. 273.

La protección que otorga la cláusula federal opera en Puerto Rico de dos (2) maneras. Por un lado, el Tribunal Supremo federal ha reconocido que las protecciones de la garantía federal del debido proceso de ley aplican a los residentes de Puerto Rico. *Examining Board v. Flores de Otero*, 426 U.S. 572 (1976).(¹) En segundo lugar, en múltiples ocasiones hemos reconocido que las interpretaciones que hace la Corte Suprema federal en torno al contenido de la garantía federal constituyen el mínimo de protección que estamos llamados a reconocer según nuestra propia Carta de Derechos. *Rodríguez Rodríguez v. E.L.A.*, supra. Este principio lo hemos reiterado al interpretar aquellas garantías constitucionales de nuestra Constitución que tienen su contraparte en la Constitución federal, tanto en casos de naturaleza criminal (*Pueblo v. Meléndez Rodríguez*, 136 D.P.R. 587 (1994); *Pueblo v. Santos Vega*, 115 D.P.R. 818, 823 (1984); *Pueblo v. Lebrón*, 108 D.P.R. 324, 327 (1979); *Pueblo v. Dolce*, 105 D.P.R. 422, 428 (1976)) como en otros dentro del ámbito civil (*U.N.T.S. v. Srio. de Salud*, 133 D.P.R. 153 (1993), libertad de expresión; *Bayrón Toro v. Serra*, 119 D.P.R. 605, 619 (1987), menoscabo de obligaciones contractuales).

La concesión de garantías constitucionales realizada en la jurisdicción federal no ha sido óbice para que otorguemos mayor protección al amparo de los mismos derechos de acuerdo con nuestra Constitución. En varias instancias hemos reclamado la factura más ancha de nuestra Carta de Derechos. *E.L.A. v. Hermandad de Empleados*, 104 D.P.R.

---

(¹) La Corte, sin embargo, ha evitado tener que decidir cuál garantía en particular es la aplicable a Puerto Rico, si la contenida en la Enmienda V, adoptada originalmente para limitar la acción del gobierno federal, o si aplica a través de la Enmienda XIV, la cual está dirigida a los estados.

436, 440 (1975). Véase, además, *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 226–227 (1987).

Sobre este particular estamos en una posición idéntica a la de los estados bajo el sistema federal, los cuales también pueden reconocer unas garantías más amplias que el mínimo federal. *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81 (1980); *Cooper v. California*, 386 U.S. 58, 62 (1967).([2])

B. En el caso de los empleados públicos de carrera, hemos reconocido que éstos poseen un interés propietario sobre la retención de sus empleos y que, por lo tanto, en caso de despido están cobijados por la cláusula del debido proceso de ley. *Orta v. Padilla Ayala*, 131 D.P.R. 227 (1992).

Al momento de decidir *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 730 (1982), habíamos resuelto que "el debido proceso de ley no requiere que haya una vista previa a toda privación de un derecho o interés propietario". Allí debíamos considerar si la suspensión sumaria de empleo y de sueldo de un alcalde, decretada por el Gobernador, había violado las garantías del debido proceso de ley tanto según nuestra Constitución, como según la federal. Dijimos que cuando la privación de empleo era temporal,

---

([2]) La prerrogativa de otorgar derechos de una manera más amplia que la Constitución federal ha sido objeto de discusión en Estados Unidos por motivo de una tendencia por parte de las cortes estatales durante las dos (2) décadas pasadas, que consiste en reconocer mayores garantías a los individuos a través de sus propias cartas de derechos. Esto ha respondido tanto a una reacción en contra de decisiones más restrictivas por parte del Tribunal Supremo federal, como a un auténtico interés en desarrollar un derecho constitucional autóctono. *Fulana de Tal v. Demandado A*, 138 D.P.R. 610, 632 esc. 1 (1995), opinión concurrente y disidente del Juez Asociado Señor Fuster Berlingeri; *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 226–227 (1987). Véanse: D. Toth Beasley, *Emerging Issues in State Constitutional Law*, 67 Temp. L. Rev. 925 *et seq.* (1994); Simposio, *"The Law of the Land". The North Carolina Constitution and State Constitutional Law*, 70 N.C.L. Rev. 1699 (1992); *Annual Issue on State Constitutional Law*, 22 Rutgers L.J. 815 (1991). Algunos critican la tendencia y aconsejan cautela por parte de los tribunales estatales. T. Morawetz, *Deviation and Autonomy: The Jurisprudence of Interpretation in State Constitutional Law*, 26 Conn. L.Rev. 635 (1994); E.M. Martz, *False Prophet—Justice Brennan and the Theory of State Constitutional Law*, 15 Hastings Const. L.Q. 429 (1988).

Véase, también, E.L. Chiesa Aponte, *Los Derechos de los Acusados y la Factura más Ancha* (mimeo, noviembre de 1994).

sólo bastaba que, en algún momento significativo, el afectado tuviera la oportunidad de defenderse y presentar su caso en un proceso con garantías adecuadas. Reconocimos que existen ocasiones cuando el Estado posee algún interés de importancia que exige la intervención temporal con la propiedad o libertad de una persona, antes de que pueda brindársele la oportunidad de ser oído. En función de lo anterior, identificamos los siguientes factores que se han de considerar para determinar cuando existe el derecho a una vista previa: (1) los intereses que resultan afectados por la acción oficial; (2) el riesgo de hacer una determinación errónea que conlleve un menoscabo del interés protegido del empleado y el valor probable de garantías adicionales o distintas, y (3) el interés que el Estado busca proteger mediante la suspensión sumaria, en atención tanto a la función específica como a las cargas fiscales y administrativas que supondría la concesión de garantías adicionales. Íd., págs. 730–737.

Posterior a esa decisión, en *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), el Tribunal Supremo de Estados Unidos reconoció el derecho a una vista informal previa al despido de aquellos empleados públicos poseedores de un interés propietario en sus puestos e interpretó a tales efectos las exigencias del debido proceso de ley— al amparo de la Constitución federal. El Tribunal resolvió, en primer lugar, que la ley estatal es la que determina si existe un interés propietario por parte del empleado en su puesto. Adquirido dicho interés propietario, entran en función las garantías del debido proceso de ley —Enmiendas V y XIV de la Constitución federal— las cuales impiden que dicho empleado sea despedido sin una oportunidad previa de ser escuchado. El interés propietario del empleado no está suficientemente protegido con la celebración de una vista con posterioridad al despido.

Según el Tribunal, la necesidad de una vista preliminar resulta clara al hacer un balance de los intereses en juego. Estos son:

> ... el interés privado de retener el empleo, el interés del Gobierno en remover rápido a empleados mediocres y evitar cartas administrativas, y el riesgo de efectuar un despido incorrecto. ...
>
> En primer lugar, no se puede negar cuán importante es el interés privado de retener el empleo. Con frecuencia hemos reconocido cuán difícil es privar a una persona de sus medios para ganarse la vida. ...
>
> En segundo lugar, es obvio que brindarle al empleado una oportunidad de presentar su versión de los hechos ha resultado, en repetidas ocasiones, de gran valor al momento de tomar una decisión certera. Los despidos por justa causa generalmente se fundan en controversias de hechos. Aun cuando los hechos estén claros, puede que la corrección o la necesidad del despido no esté tan clara; en tales casos, es probable que la única oportunidad significativa de invocar la discreción de la autoridad decisoria sea antes de que entre en vigor el despido. (Citas omitidas y traducción nuestra.) *Cleveland Bd. of Ed. v. Loudermill*, supra, págs. 542–543.

El Tribunal no pasó por alto el legítimo interés que puede tener el Gobierno de que una persona cese en su puesto de la manera más pronta posible. Sin embargo, consideró que esta preocupación no puede superar la protección constitucional de la que goza el empleado. Concluyó, en ese sentido, que otorgar una oportunidad al empleado de responder a los cargos, antes de su despido, no resultaba demasiado oneroso. *Cleveland Bd. of Ed. v. Loudermill*, supra, pág. 544. No obstante, la opinión también dispuso la posibilidad de situaciones en que la mera presencia del empleado en su puesto pueda conllevar un factor de alto riesgo y de peligro para la seguridad pública. En esos casos, sería permisible una suspensión sumaria de empleo, mas no de sueldo.

> ... Finalmente, en aquellas situaciones cuando el patrono con-

sidere que mantener al empleado en su puesto conllevaría un riesgo significativo, podrá evitar el problema mediante la suspensión con sueldo. (Traducción nuestra.) *Cleveland Bd. of Ed. v. Loudermill,* supra, págs. 544–545.

En *Torres Solano v. P.R.T.C.,* 127 D.P.R. 499 (1990), tuvimos, por primera vez, la oportunidad de acoger lo resuelto en *Cleveland Bd. of Ed. v. Loudermill,* supra.[3] En ese caso un empleado público regular de la Puerto Rico Telephone Company fue suspendido sumariamente de empleo y de sueldo como consecuencia de haber agredido a un compañero de trabajo. Posteriormente se comunicó al empleado su destitución, con fecha retroactiva al día cuando fue suspendido. Tras examinar nuestra legislación y reglamentación sobre el derecho a una vista previa, "decretamos la inconstitucionalidad de la Sec. 4.6(4) de la Ley de Personal [del Servicio Público de Puerto Rico], 3 L.P.R.A. sec. 1336(4); de la Sec. 9.2 del Reglamento de Personal de O.C.A.P. y el Art. 12.3 del Reglamento de de Personal de la Telefónica, en tanto y en cuanto no proveen para una vista informal antes de despedir al empleado público". Íd., pág. 526.

Primero examinamos el caso a la luz de los tres (3) criterios de *Vélez Ramírez v. Romero Barceló,* supra, relacionados a la necesidad de una vista previa, para pasar entonces a adoptar los contornos del debido proceso de ley según esbozados en *Cleveland Bd. of Ed. v. Loudermill,* supra. Aunque al final reconocimos que en ese caso en particular la conducta del empleado justificó su despido, *dejamos inalterada la decisión de instancia de que le pagaran los salarios dejados de percibir desde la fecha de su suspensión hasta la del despido definitivo.* Dicha decisión del tribunal de instancia constituyó, a su vez, una confirmación de lo decidido por el Oficial Examinador a nivel administrativo.

---

[3] En *Torres v. P.R.T.C.,* 118 D.P.R. 198, 202 esc. 5 (1987), advertimos que era innecesario en ese momento emitir juicio sobre la doctrina adoptada en *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532 (1985).

... En su resolución, el Oficial Examinador confirmó la destitución de Torres Solano por entender que la agresión implicaba justa causa para el despido a pesar de haber sido ésta su primera ofensa. *No obstante, el Oficial Examinador le reconoció el derecho a recobrar retroactivamente su salario desde la fecha de la destitución hasta la fecha de su decisión.* Éste fundamentó su concesión de paga retroactiva en que a Torres Solano se le había violado su derecho a un debido proceso de ley al no habérsele conferido el derecho a una vista previa a su despido, en conformidad con lo resuelto por el Tribunal Supremo de Estados Unidos en *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1988). (Énfasis en el original.) *Torres Solano v. P.R.T.C.*, supra, pág. 510.

Al reseñar lo decidido por el Tribunal Supremo federal, también reconocimos la excepción a la exigencia de una vista previa para los casos de peligro y riesgo a la seguridad pública. Expresamos:

*Cleveland Board of Education v. Loudermill*, supra, estableció también claramente que no es necesario la celebración de una vista previa al despido en todos los casos. En situaciones donde el patrono percibe un peligro significativo (a significant hazard in keeping the employee on the job) al interés gubernamental si mantiene al empleado en su puesto, el curso a seguir es la suspensión del empleado con sueldo. (Citas y escolios omitidos y énfasis suprimido.) *Torres Solano v. P.R.T.C.*, supra, pág. 524.

Esto último fue precisamente lo que aconteció en *Díaz Martínez v. Policía de P.R.*, supra. Este Tribunal sostuvo la suspensión sumaria de empleo de un policía, empleado público regular, sin la celebración de una vista informal previa. Amparados en la norma de *Cleveland Bd. of Ed. v. Loudermill*, supra, resolvimos que el caso estaba cubierto por la excepción de empleados públicos en puestos que suponen un peligro significativo. Sin embargo, atendiendo a que la suspensión sumaria en ese caso fue de empleo *y de sueldo*, sostuvimos al tribunal de instancia en su determinación de ordenar el pago y los beneficios dejados de recibir por el policía desde que fue suspendido hasta la fecha de su expulsión. Resumimos la doctrina general del modo siguiente:

... Al amparo de las doctrinas establecidas en *Cleveland Bd. of Ed. v. Loudermill* 470 U.S. 532 (1985) y en *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982), y considerando la naturaleza de los intereses particulares afectados, el riesgo de una decisión errónea y el interés gubernamental protegido, concluimos que de ordinario la celebración de una vista informal antes de la destitución promovía los mejores intereses de la administración pública. El empleado público de carrera *"tiene ese derecho aún cuando el estatuto o contrato que le da derecho a permanencia en su puesto no provea para la celebración de una vista previa y sí para una vista formal con posterioridad al despido"*. *Torres Solano v. P.R.T.C.*, supra.

Igualmente, una suspensión sumaria priva a un empleado público de sus derechos propietarios a recibir un sueldo y beneficios marginales, y a desempeñar las funciones de su cargo. La suspensión de empleo y sueldo tiene unos efectos negativos inmediatos sobre el empleado, pues ·afecta particularmente su capacidad para generar ingresos y sostener a su familia. (Énfasis suplido.) *Díaz Martínez v. Policía de P.R.*, supra, pág. 150.

Posteriormente, en *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215 (1995), tuvimos la ocasión de elaborar cuál es el alcance de la vista informal a la que tiene derecho el empleado.

## III

La opinión de la mayoría procura caracterizar lo decidido en *Díaz Martínez v. Policía de P.R.*, supra, como la adopción de una nueva norma de derecho, y pasa entonces a analizar si lo allí resuelto debe tener o no un efecto retroactivo. Según la opinión mayoritaria, en *Díaz Martínez* establecimos "como nueva norma jurisprudencial" que "por imperativo constitucional, un empleado público de carrera tiene derecho a una vista informal previa a su *suspensión sumaria de sueldo*". (Énfasis en el original.) Opinión mayoritaria, págs. 275–276.

Sin lugar a dudas, es incuestionable nuestra facultad para determinar la aplicación prospectiva o retroactiva de las doctrinas jurídicas que adoptemos como máximo intér-

prete del Derecho puertorriqueño. *Gorbea Vallés v. Registrador*, 131 D.P.R. 10 (1992). Sin embargo, es forzoso concluir que en el caso de autos es improcedente emprender un análisis sobre la posible retroactividad de lo decidido en *Díaz Martínez v. Policía de P.R.*, supra. La naturaleza de lo allí resuelto y el contexto de los casos en que, en efecto, sí hemos considerado la retroactividad o prospectividad de una decisión judicial, son asuntos distintos.([4])

Lo cierto es que en *Díaz Martínez v. Policía de P.R.*, supra, ratificamos la aplicabilidad en Puerto Rico de la norma adoptada por el Tribunal Supremo federal en *Cleveland Bd. of Ed. v. Loudermill*, supra. En el contexto de la protección a la que los empleados públicos de carrera son merecedores, la interpretación que hizo *Loudermill* de las exigencias de la cláusula federal del debido proceso de ley pasó a constituir el contenido mínimo de nuestra propia cláusula constitucional. Así lo reconocimos en *Brunet Justiniano v. Gobernador*, 130 D.P.R. 248 (1992).

Como el Tribunal Supremo federal establece el contenido mínimo de las garantías constitucionales, desde *Cleveland Bd. of Ed. v. Loudermill*, supra, la suspensión de empleo y de sueldo sin la celebración de una vista informal previa es una lesión que tanto los tribunales federales y estatales,([5]) así como los de Puerto Rico, están llamados a vindicar. Así lo reconoció también la Rama Ejecutiva,

---

([4]) Nuestras decisiones en *Pueblo v. Báez Cintrón*, 102 D.P.R. 30 (1974); *Pueblo v. París Medina*, 101 D.P.R. 253 (1973); *Pueblo v. Cruz Jiménez*, 99 D.P.R. 565 (1971), y *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765 (1965), no hacen sino negar la aplicación retroactiva de normas relacionadas a los derechos constitucionales de personas sujetas a procedimientos criminales en aquellos casos ya adjudicados y cuya sentencia había sido final y firme al momento de incorporarse la nueva doctrina. Por otra parte, *Gorbea Vallés v. Registrador*, 131 D.P.R. 10 (1992), y *Correa Vélez v. Carrasquillo*, 103 D.P.R. 912 (1975), giran en torno a la interpretación de una legislación, por lo que tampoco estaba presente una controversia de índole constitucional como la aquí planteada.

([5]) En el caso de los estados, véanse: *Sedbrook v. Rouse*, 894 P.2d 435 (Okla. App. 1994); *Department of Institutions v. Kinchen*, 886 P.2d 700, 707, esc. 13 (Colo. 1994); *Prue v. Hunt*, 581 N.E.2d 1052 (1991); *Swiger v. Civil Service Com'r.*, 365 S.E.2d 797 (1987).

quien cursó una comunicación al respecto dirigida a las distintas agencias de gobierno.

> El 17 de junio de 1986, la Oficina Central de la Administración de Personal (O.C.A.P.) emitió la Carta Normativa Núm. 1-86, dirigida a los señores Secretarios del Gobierno (*incluso al Secretario de Justicia*), Jefes de Agencia, Directores de Corporaciones Públicas y Alcaldes, Sistema de Personal y Agencias excluidas de la Ley de Personal del Servicio Público de Puerto Rico, que proveía para una vista informal en los casos de suspensión de empleo y sueldo o destitución, y acogía lo resuelto en el caso de *Cleveland Board of Education v. Loudermill*, supra. *Tal actuación es un reconocimiento por la Rama Ejecutiva del defecto constitucional de las disposiciones* [estatutarias y reglamentarias que no proveen para una vista previa]. (Énfasis en el original.) *Torres.Solano v. P.R.T.C.*, supra, pág. 525 esc. 9.

A la luz de lo anterior, es imposible acoger el planteamiento del Superintendente de que actuó de acuerdo con lo que entendía que era el derecho vigente al momento de suspender a Quiles Rodríguez. Para la fecha de la suspensión, febrero de 1992, la doctrina de *Cleveland Bd. of Ed. v. Loudermill*, supra, había estado en vigor por siete (7) años y la de *Torres Solano v. P.R.T.C.*, supra, por dos (2). Claramente para esa fecha Quiles Rodríguez tenía el derecho constitucional a una vista informal previa a su suspensión sumaria y todavía esta Curia no había adoptado la excepción de *Díaz Martínez v. Policía de P.R.*, supra.

Por otro lado, la opinión *per curiam* parece distinguir entre el derecho a una vista informal previa en el caso de la suspensión *de empleo*, de aquel en que ocurre una suspensión *de sueldo*. Dicho análisis confunde la medida en que son separables el empleo y el sueldo. De ordinario, cuando una persona es suspendida de empleo, ello acarrea igual suspensión de sueldo. Así ocurrió en *Vélez Ramírez v. Romero Barceló*, supra, *Torres Solano v. P.R.T.C.*, supra, *Díaz Martínez v. Policía de P.R.*, supra, y en el caso de autos. Es por ello que una de las maneras de justificar el interés propietario que puede verse afectado con una suspensión de empleo es mediante un reconocimiento del daño

que recibe una persona a quien se le priva de su principal medio de sustento. *Cleveland Bd. of Ed. v. Loudermill*, supra, pág. 543; *FDIC v. Mallen*, 486 U.S. 230, 243 (1988). La posibilidad de privar erróneamente a un empleado público de carrera de su salario es uno de los fundamentos principales para exigir una vista informal previa. Véase la opinión concurrente del Juez Marshall en *Loudermill*, supra, págs. 549–550.

Contrario a lo que plantea la opinión de la mayoría, el *ratio* de *Díaz Martínez v. Policía de P.R.*, supra, no fue que hacía falta una vista informal previa antes de suspender a un empleado público de carrera de su sueldo. Resolvimos, siguiendo a *Cleveland Bd. of Ed. v. Loudermill*, supra, y a *Torres Solano v. P.R.T.C.*, supra, que el policía Díaz Martínez era merecedor de las garantías constitucionales del debido proceso de ley que requieren la celebración de una vista informal previa a una suspensión de empleo y de sueldo. Sin embargo, dado el particular puesto público que él desempeñaba y la naturaleza de las imputaciones en su contra, por primera vez aplicamos la excepción expuesta a manera de *dictum* en *Loudermill* y *Torres Solano*, a aquellos casos en los cuales la agencia considere que la retención del empleado puede constituir un peligro significativo a la seguridad de otras personas o a la propiedad pública.

En síntesis, contrario a la tesis del *per curiam*, en *Díaz Martínez v. Policía de P.R.*, supra, lo que hicimos fue limitar los derechos de algunos policías, y no ampliarlos. Desde esa fecha el Superintendente estaba autorizado a suspender sumariamente de empleo, y no de sueldo, a policías sin una vista informal previa si percibía que su continuidad en el empleo constituía un riesgo a la seguridad pública. De esta forma reconocimos la facultad del Superintendente para suspender al policía sumariamente, mas sólo de empleo en esos casos. Esta limitación está predicada en que el elemento de peligrosidad que hace necesario un retiro impostergable y temporal del empleado, mientras se atienden

los cargos en su contra, no tiene por qué incidir sobre el derecho del empleado a conservar su sueldo, probablemente su único sustento. Ésta requiere que el Superintendente haga inicialmente una determinación de que, en vista de las imputaciones en su contra, el policía objeto de la investigación constituye un peligro para la seguridad de terceros.

La excepción de *Díaz Martínez v. Policía de P.R.*, supra, opera sobre el empleo y no afecta, ni se establece, en detrimento del interés propietario del empleado sobre su salario. Tal como expresamos allí:

> ... [C]omo en [los casos de suspensiones sumarias de empleados públicos,] la suspensión afecta adversamente la capacidad del empleado para sostener sus vidas, en *Cleveland Bd. of Ed. v. Loudermill*, supra, se estableció que la acción sumaria tenía que limitarse el empleo mismo. Por ende, en los casos donde la continuidad en el empleo crea una situación peligrosa para el Estado o los intereses protegidos por el Gobierno, se puede suspender sumariamente de empleo a un empleado público sin la celebración de vista previa, siempre que continúe recibiendo el sueldo y se le ofrezca —en un término razonable de tiempo— una oportunidad de ser oído en una vista informal o en una en la cual se adjudique formalmente la controversia. *Díaz Martínez v. Policía de P.R.*, supra, pág. 153. Véase, en igual sentido, *McMillen v. U.S.D. No. 380*, 855 P.2d 896, 902 (Kan. 1993); *Morton v. Beyer*, 822 F.2d 364, 368–369 esc. 5 (3er Cir. 1987).

De hecho, nos llama la atención que, en la carta que notifica a Quiles Rodríguez de su suspensión sumaria de empleo y de sueldo, el Superintendente usara como fundamento para la acción disciplinaria la Sec. 9.2 del Reglamento de Personal; Áreas Esenciales al Principio del Mérito de la Oficina Central de Administración de Personal. Esta Carta de 27 de febrero de 1992 constituye una abierta violación a nuestro dictamen de 20 de noviembre de 1990 en *Torres Solano v. P.R.T.C.*, supra, en el cual decretamos la inconstitucionalidad de dicha sección del Reglamento de Personal, *supra*, en cuanto no requería la celebración de una vista informal previa a una suspensión sumaria de

empleo y de sueldo. El derecho del empleado a seguir recibiendo su sueldo era claro al momento de decidir en *Díaz Martínez v. Policía de P.R.*, supra. Véanse al respecto y a modo de comparación: *Bass v. City of Albany*, 968 F.2d 1067, 1069 (11vo Cir. 1992), " 'los pagos de los beneficios no pueden ser suspendidos sin una vista previa' " (traducción nuestra); *Everett v. Napper*, 833 F.2d 1507, 1512 (11vo Cir. 1987), "reconocemos que 'cuando un patrono percibe que existe un peligro significativo, si retiene al empleado en su empleo', el patrono puede suspender al empleado con sueldo, aun antes de concederle una oportunidad de ser oído" (traducción nuestra). Tan claro era que tanto el tribunal de instancia en aquel caso, como el foro de instancia en éste, ordenaron el pago del salario dejado de recibir por ambos policías desde su suspensión hasta la fecha de su expulsión definitiva.

Celebrar una vista informal requiere una erogación mínima de fondos y, si se celebra rápidamente y se determina que el policía constituye un peligro para terceros, el Estado puede proceder con la suspensión de sueldo. Corresponde al Estado actuar con celeridad y celebrar la vista informal lo más rápido posible si es que quiere evitar una erogación sustancial de fondos durante el trámite disciplinario.

En el caso de autos, la Policía esperó más de tres (3) meses para suspender sumariamente a Quiles Rodríguez desde que ocurrieron los hechos que originaron la imputación en su contra. Esta demora es incompatible con el argumento del Estado de que había que suspenderlo sumariamente y que la aplicación retroactiva de *Díaz Martínez v. Policía de P.R.*, supra, le costará una cantidad sustancial de fondos. La Policía pudo haber actuado con mayor rapidez y diligencia para evitar el gasto que ahora objeta.

El alcance de los derechos constitucionales de los servidores públicos no puede depender sólo del costo del remedio judicial. En *Colón v. Municipio de Guayama*, 114 D.P.R. 193, 201 (1983), expresamente rechazamos este argumento

que usualmente utiliza el Estado y sus defensores para evitar que diseñemos unos remedios para proteger los derechos humanos. Allí afirmamos que "la disponibilidad de fondos públicos no puede ser un criterio *determinante* para decidir si una persona tiene derecho a que se le proteja de la aplicación de una ley que afecta sus derechos constitucionales". (Énfasis suplido.) Íd., págs. 201–202. Hoy reafirmamos este pronunciamiento.

## IV

Por otro lado, aun si dejáramos de considerar el contenido mínimo que *Cleveland Bd. of Ed. v. Loudermill*, supra, le confirió a nuestra cláusula del debido proceso de ley, se desprende del expediente que a nivel administrativo Quiles Rodríguez alegó la protección de la Constitución federal. Apéndice, pág. 71. Dado que nuestros tribunales están obligados a acatar dicha Constitución y los dictámenes de su máximo intérprete, el Tribunal Supremo federal, Quiles Rodríguez tenía derecho a que un tribunal del Estado Libre Asociado de Puerto Rico vindicara su lesión a la luz de *Loudermill* y ordenara, de acuerdo con el derecho federal, el pago del salario dejado de devengar desde su suspensión hasta la fecha de su expulsión. Por ende, la opinión del Tribunal es totalmente contraria a la normativa constitucional federal.

## V

En conclusión, si bien nuestra Constitución es de factura más ancha que la federal, esta última establece el mínimo de los derechos que han de reconocerse. Nuestra cláusula del debido proceso de ley no puede garantizar menos derechos que la federal. De esta manera, una vez decidido *Cleveland Bd. of Ed. v. Loudermill*, supra, lo allí resuelto constituía el mínimo de nuestra propia Constitu-

ción. *Torres Solano v. P.R.T.C.*, supra, y *Díaz Martínez v. Policía de P.R.*, supra, son casos que llegaron a este Tribunal, en donde aplicamos la norma según interpretada por el Tribunal Supremo federal.

Tal como dictaminó el tribunal de instancia, Quiles Rodríguez tiene derecho al pago de salarios dejados de percibir, pues al momento cuando fue suspendido de sueldo estaba asistido por un derecho constitucional a la celebración de una vista informal previa. Demás está decir que el juez del tribunal de instancia, Hon. Amadeo Murga, resolvió conforme con los principios antes esbozados. Tras considerar los planteamientos de retroactividad presentados en reconsideración por el Superintendente, expresó:

... Sin embargo, desde 1985 *Cleveland Board of Education v. Loudermill*, supra, había hecho claro que [sic] la obligación de la autoridad gubernamental de conceder una vista informal previa a cualquier suspensión de empleo y sueldo. Las decisiones del Tribunal Supremo de los Estados Unidos en materia de derecho constitucional, bajo la Constitución de los Estados Unidos de América, aplican directa e inmediatamente al Estado Libre Asociado de Puerto Rico y no tienen que pasar por el crisol del Tribunal Supremo de Puerto Rico. Por lo tanto, no tiene fundamento la alegación de que debe dársele a *Díaz Martínez* una aplicación prospectiva. (Énfasis suprimido.) Resolución de 28 de octubre de 1994, pág. 2, Apéndice, pág. 11.

Su decisión aplicó con corrección la normativa constitucional que estaba vigente en Puerto Rico desde *Cleveland Bd. of Ed. v. Loudermill*, supra, y *Torres Solano v. P.R.T.C.*, supra, y debe ser confirmada.

Por las razones anteriormente expuestas, disentimos de la opinión del Tribunal.