ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUIS F. SANTA RIVERA; ET ALS<br><br>Demandante<br><br>v.<br><br><br>HOSPITAL U.P.R. DR. FEDERICO TRILLA<br><br>Demandados<br><br>SERVICIOS MÉDICOS UNIVERSITARIOS, INC.<br><br>Coparte Apelante<br><br>V.<br><br>TRIPLE-S PROPIEDAD, INC.<br><br>Apelada | KLAN202500258 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: F DP2015-0109<br><br>Salón: 0406<br><br>Sobre: Daños y Perjuicio |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Salgado Schwarz y el Juez Pagán Ocasio.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 12 de agosto de 2025.

Comparece Servicios Médicos Universitarios, Inc. ("SMU" o "Apelante") quien nos solicita que revisemos la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina ("foro de instancia" o "foro recurrido") el 26 de febrero de 2025.

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLAN202200834, KLCE202201339 y KLAN202400029).

Mediante dicha *Sentencia Sumaria Parcial*, el foro de instancia declaró *Ha Lugar* la *Moción de Reconsideración* presentada por Triple S Propiedad, Inc. ("Triple-S" o "Apelada").

Por los fundamentos que exponemos a continuación, **confirmamos** la Sentencia Parcial apelada.

-I-

A continuación, se presenta el tracto procesal relevante a la controversia que nos ocupa.

El caso ante nos comenzó el 17 de abril de 2015 cuando los señores Luis Santana Rivera, Danny Ríos Soto, Omar Rodríguez Valdivia, William González, Jorge Campudoni, William Colón Tran, y las señoras Norma Iris Santana Rivera, Evelyn Rosario Ortiz, y Cristina Álvarez Tran, radicaron seis (6) *Demandas* sobre daños y perjuicios. Las referidas demandas fueron presentadas en contra de varios demandados, entre los cuales se encuentran, el Hospital U.P.R. Dr. Federico Trilla ("Hospital UPR"), SMU, y Triple S Propiedad, Inc. ("Triple-S").[2] Estas demandas fueron enmendadas posteriormente.[3] Asimismo, los seis (6) casos fueron consolidados mediante *Minuta-Resolución*.[4]

En esencia, los demandantes adujeron en las demandas que sus familiares fallecieron tras haber contraído la bacteria Acinetobacter Baumannii ("ABCx") en las instalaciones del Hospital UPR, por lo que solicitaron indemnización por los daños sufridos a causa de sus muertes. Argumentaron, además, que el deceso de sus familiares fue una consecuencia directa por el contagio de ABCx.

---

[2] Véase Apéndice del recurso de *apelación*, a las págs. 1-97.
[3] *Íd.*, a las págs. 461-579.
[4] *Íd.*, a las págs. 586-591.

En lo pertinente, se desprende de la *Sentencia Parcial* aquí impugnada lo siguiente: 1) que, el 26 de enero de 2016, SMU presentó una *Demanda contra Coparte* contra Triple-S, a través de la cual reclamó que le proveyera defensa al amparo del Contrato de Seguro habido entre ellos; 2) que, el 6 de octubre de 2016, Triple-S contestó la referida demanda; 3) que, el 14 de septiembre de 2016, SMU solicitó que se dictara sentencia sumaria a su favor para que el foro recurrido declarara ha lugar la demanda contra coparte que radicó contra Triple-S, y para que además le ordenara a esta a proveerle defensa al Apelante en virtud del mencionado Contrato de Seguro; y 4) que, el 1 de marzo de 2017, Triple-S presentó su oposición a dicha sentencia sumaria.[5]

Así las cosas, el 30 de junio de 2017, el foro de instancia emitió una Sentencia Parcial mediante la cual declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por SMU.[6] En este dictamen, el referido foro solamente analizó la cláusula de exclusión de cubierta por hongo o bacteria, pues entendió que era suficiente para disponer de dicha solicitud. Concluyó que la exclusión de cubierta por hongo o bacteria no aplicaba en el caso de epígrafe. Por consiguiente, ordenó a Triple-S proveer al Apelante cubierta dentro de los límites del Contrato de Seguro y defensa en el pleito, incluyendo los gastos incurridos. Igualmente, determinó que no existían controversias sustanciales en los siguientes hechos esenciales y pertinentes:

1. La demanda de autos es una reclamación que presentaron los familiares, herederos o allegados de varios pacientes que fallecieron en el Hospital Universitario de la Universidad de Puerto Rico Dr. Federico Trilla alegadamente

---

[5] *Íd.,* a la pág. 2456.
[6] *Íd.,* a las págs. 1832-1843.

como consecuencia de haberse infectado con la bacteria Acinetobacter baumanii por supuestos actos negligentes de los co-demandados en este pleito. […]

2. SMU y Triple-S suscribieron el contrato de seguros de cubierta comercial 30-CP-81042699-0/000 para el período comprendido entre el 27 de marzo de 2011 y el 27 de marzo de 2012. […]

3. SMU y Triple-S suscribieron el contrato de seguros de cubierta comercial 30-CP-81042699-0/000 para el período comprendido entre el 27 de marzo de 2012 y el 27 de marzo de 2013. […]

4. SMU y Triple-S suscribieron el contrato de seguros de cubierta comercial 30-CP-81042699-0/000 para el período comprendido entre el 27 de marzo de 2013 y el 27 de marzo de 2014. […] En lo sucesivo nos referimos conjuntamente a dichos contratos como el Contrato de Seguro.

5. Los antes dichos contratos de seguros contienen esencialmente el mismo lenguaje. La única diferencia es el periodo de vigencia de cada uno. […]

6. El Contrato de Seguro provee cubierta de responsabilidad pública y defensa bajo el "Comercial General Liability Form" (forma CG 00 01 10 01). Los límites de cubierta del Contrato de Seguro son $1,000,000 por ocurrencia y $2,000,000 en el agregado. […]

7. Conforme con los términos y condiciones del Contrato de Seguro, Triple S se obligó a proveer cubierta y defensa a SMU por cualquier reclamación en su contra por lesión corporal ("bodily injury") o daño a la propiedad ("propiedad damage") causado por una ocurrencia ("occurrence") dentro del territorio y durante la vigencia del mismo, con la salvedad de que la obligación de defensa no se extiende a reclamaciones no cubiertas por la póliza.

8. Esta obligación está recogida en la Sección 1 de la forma CG 00 01 10 01 denominada "COVERAGES". La cubierta A de dicha sección lee como sigue:

   a. Insuring Agreement

      We will pay those sums that the insured legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…"

9. El Contrato de Seguro define "bodily injury" como "bodily injury, sickness or disease

sustained by a person, including death resulting from any of these at anytime".

10. El Contrato de Seguro define "occurrence" como "an accident, including contnuous or repeated exposure to substantially the same general harmful conditions".

11. El Contrato de Seguro Contiene varias exclusiones a la obligación de proveer cubierta y defensa, entre las que se encuentran: la de hongo o bacteria ("Fungi or Bacteria"), la de servicios provistos por profesionales de la salud ("Services Furnished by Healthcare Providers"), la de enfermedades transmisibles ("Communicable Disease"), y la de servicios profesionales ("Designated Professional Exclusion").

12. La exclusión por hongo o bacteria ("Fungi or Bacteria Exclusion") contenida en el endoso CG 21 67 04 02 del Contrato de Seguros lee como sigue:

"This insurance does not apply to:
Fungi or Bacteria

   a. "Bodily Injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure including its contents, regardless of whether any other cause, event material or product contributed concurrently or in any sequence to such injury or damage.

   b. Any loss, cost or expenses arising out the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects, of "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" bacteria that are, are on, or are contained in, a good or product intended for consumption".

13. La exclusión por enfermedades transmisibles ("Communicable Disease Exclusion") contenida en el endoso SSS 0302 (02/06) del Contrato de Seguro lee como sigue:

   "This policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" which arises of the transmission of a communicable disease".

14. La exclusión por servicios ofrecidos por proveedores médicos ("Services Furnished by Health Care Providers") contenida en el endoso

CG 22 44 07 98 del Contrato de Seguro lee como sigue:

"Description of Operation:

The following exclusion is added to Paragraph 2, Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2, Exclusions of Section I Coverage B – Personal and Advertising Injury Liability:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising" arising out of:

1. The rendering or failure to render:

   a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;
   b. Any health or therapeutic services, treatment, advice or instruction; or
   c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

2. The furnishing or dispensing of drugs or medical, dental or surgical appliances;

3. or the handling or treatment of dead bodies, including autopsies, organ donation or other procedures".

15. La exclusión por servicios profesionales ("Designated Professional Services Exclusion") contenida en el endoso CG 21 16 07 98 del contrato de seguro lee como sigue:
    "Description of Professional Services:

    …This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service".

16. SMU notificó a Triple S sobre la reclamación objeto de este pleito y le solicitó que extendiera cubierta y proveyera defensa de conformidad con los términos del Contrato de Seguro.

17. Triple S proveyó inicialmente representación legal a SMU. No obstante, el 9 de octubre de 2015 Triple S informó a SMU que no continuaría ofreciéndole defensa ni proveería cubierta porque las causas de acción incluidas en la demanda estaban excluidas del Contrato de Seguro al amparo de las exclusiones por hongo o Bacteria ("Fungi or Bacteria"), por servicios provisto por profesionales de la salud ("Services Furnished by Health Care Providers"), por la de enfermedades transmisibles ("Communicable Disease"), y por

la de servicios profesionales ("Designated Professional Exclusion").[7]

A raíz de ello, el 27 de julio de 2017, Triple-S presentó una *Moción de Reconsideración* […]. Argumentó que el foro recurrido limitó su análisis en la *Sentencia Parcial* anteriormente discutida a una sola de las cuatro exclusiones del Contrato de Seguro, en lugar de analizar cada una de ellas por separado para determinar su aplicabilidad.

Tras varios trámites procesales adicionales, el 31 de agosto de 2021, Triple-S presentó una *Moción de Sentencia Sumaria Parcial en cuanto a las Alegaciones del Hospital Universitario Federico Trilla*, en la que solicitó la aplicación de las exclusiones sobre servicios profesionales y servicios médicos contenidas en el Contrato de Seguro suscrito por Triple-S y SMU, conforme a los resuelto en *Rivera Matos et al. v. Triple-S et al,* 204 DPR 1010 (2020).[8] El 22 de noviembre de 2021, SMU presentó su *Oposición a la Moción en Solicitud de Sentencia Sumaria Parcial de Triple S Propiedad*.[9] Argumentó que no procedía dictar sentencia sumaria parcial por no existir un nexo causal entre la presencia de la bacteria en el Hospital UPR y la falta de limpieza en este. Igualmente, arguyó que la moción de sentencia sumaria era prematura, y, por lo tanto, no eran de aplicación las exclusiones del Contrato de Seguro.

El 8 de noviembre de 2022, el foro primario emitió una *Sentencia Parcial* a través de la cual declaró *Ha Lugar* la moción de sentencia sumaria presentada por Triple-S, y, en consecuencia, desestimó con perjuicio

---

[7] *Íd.*, a las págs. 1833-1836.s
[8] *Íd.*, a las págs. 1511-1525.
[9] *Íd.*, a las págs. 1775-1795.

las causas de acción instadas por SMU contra Triple-S.[10] Posteriormente, el 30 de noviembre de 2022, SMU presentó una *Moción en Solicitud de Reconsideración*, la cual fue declarada *No Ha Lugar* por el foro recurrido el 6 de diciembre de 2023.[11] En vista de ello, el 10 de enero de 2024, SMU presentó un recurso apelativo ante este Tribunal.[12] En síntesis, adujo que el foro de instancia erró al aplicar el escrutinio incorrecto al momento de analizar si procedía exigir el deber de defensa a una aseguradora y al no interpretar con liberalidad las cláusulas contractuales a favor del asegurado. Además, SMU argumentó que no todos los servicios que provee son servicios profesionales. Señaló, también, que no existe prueba que demuestre un nexo causal entre la existencia de la bacteria, la falta de limpieza en el Hospital UPR y las muertes del caso de epígrafe. Asimismo, SMU sostuvo que lo resuelto en *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020), no tiene efecto retroactivo.

En aquel momento, encontramos que el Tribunal de Primera Instancia nunca resolvió la moción de reconsideración presentada por Triple-S el 27 de julio de 2017. Por lo tanto, concluimos que el foro recurrido incumplió con la Regla 47 de las de Procedimiento Civil, revocamos la Sentencia Parcial emitida el 8 de noviembre de 2022, y devolvimos el caso para la continuación de los procedimientos.

Dado a lo anterior, el 26 de febrero de 2025, el foro de instancia emitió una *Sentencia Sumaria Parcial*.[13] En resumen, el foro recurrido declaró *Ha Lugar* la moción

---

[10] *Íd*., a las págs. 1796-1799.
[11] *Íd*., a las págs. 1800-1811 y 1829-1831.
[12] *Santa Rivera v. Hosp. UPR Dr. Federico Trilla*, KLAN202400029 (26 de agosto de 2024).
[13] Véase Apéndice del recurso de *apelación*, págs. 2453-2467.

de reconsideración presentada por Triple-S el 27 de julio de 2017, por lo que dejó sin efecto tanto la demanda contra coparte instada por SMU, así como la *Sentencia Parcial* que emitió el 30 de junio de 2017. Determinó que no existía, por parte de Triple-S, el deber de proveer defensa a SMU, por entender que las alegaciones de la demanda de daños están excluidas de la cubierta del Contrato de Seguro en virtud de las cláusulas de exclusión de Servicios Profesionales y Servicios Ofrecidos por Proveedores de la Salud. Asimismo, el foro recurrido determinó que no existían controversias sustanciales sobre los siguientes hechos esenciales y pertinentes:

1. Las demandas de epígrafe fueron presentadas por familiares, herederos o allegados de varios pacientes que fallecieron en el Hospital Universitario de la Universidad de Puerto Rico Dr. Federico Trilla presuntamente como consecuencia de haberse infectado con la bacteria *Acinetobacter baumanii* por actos negligentes de los demandados.

2. SMU es la operadora del Hospital Universitario Federico Trilla que provee servicios médico-hospitalarios al público.

3. SMU y Triple-S suscribieron el contrato de seguros de cubierta comercial 30-CP-81042699-0/000 para el período comprendido entre el 27 de marzo de 2011 y el 27 de marzo de 2012. […]

4. SMU y Triple-S suscribieron el contrato de seguros de cubierta comercial 30-CP-81050623-0/000 para el período comprendido entre el 27 de marzo de 2012 y el 27 de marzo de 2013. […]

5. SMU y Triple-S suscribieron el contrato de seguros de cubierta comercial 30-CP-810592228-3/000 para el período comprendido entre el 27 de marzo de 2013 y el 27 de marzo de 2014. […] En lo sucesivo nos referimos conjuntamente a dichos contratos como el Contrato de Seguro.

6. Los antes dichos contratos de seguros contienen esencialmente el mismo lenguaje. La única diferencia es el periodo de vigencia de cada uno. […]

7. El Contrato de Seguro provee cubierta de responsabilidad pública y defensa bajo el "Comercial General Liability Form" (forma CG 00 01 10 01). Los límites de cubierta del Contrato

de Seguro son $1,000,000 por ocurrencia y $2,000,000 en el agregado. […]

8. Conforme con los términos y condiciones del Contrato de Seguro, Triple S se obligó a proveer cubierta y defensa a SMU por cualquier reclamación en su contra por lesión corporal ("bodily injury") o daño a la propiedad ("propiedad damage") causado por una ocurrencia ("occurrence") dentro del territorio y durante la vigencia del mismo, con la salvedad de que la obligación de defensa no se extiende a reclamaciones no cubiertas por la póliza.

9. El Contrato de Seguro Contiene varias exclusiones a la obligación de proveer cubierta y defensa, entre las que se encuentran: la de hongo o bacteria ("Fungi or Bacteria"), la de servicios provistos por profesionales de la salud ("Services Furnished by Healthcare Providers"), la de enfermedades transmisibles ("Communicable Disease"), y la de servicios profesionales ("Designated Professional Exclusion").

10. La exclusión por hongo o bacteria ("Fungi or Bacteria Exclusion") contenida en el endoso CG 21 67 04 02 del Contrato de Seguros lee como sigue:

"This insurance does not apply to:

Fungi or Bacteria

 c. "Bodily Injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure including its contents, regardless of whether any other cause, event material or product contributed concurrently or in any sequence to such injury or damage.

 d. Any loss, cost or expenses arising out the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects, of "fungi" or bacteria, by any insured or by any other person or entity.

  This exclusion does not apply to any "fungi" bacteria that are, are on, or are contained in, a good or product intended for consumption".

11. La exclusión por servicios ofrecidos por proveedores de la salud ("Services Furnished by Health Care Providers") contenida en el endoso CG 22 44 07 98 del Contrato de Seguro lee como sigue:

"Description of Operation:

The following exclusion is added to Paragraph 2, Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2, Exclusions of Section I Coverage B – Personal and Advertising Injury Liability:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising" arising out of:

1. The rendering or failure to render:

   a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;
   b. Any health or therapeutic services, treatment, advice or instruction; or
   c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

2. The furnishing or dispensing of drugs or medical, dental or surgical appliances; or the handling or treatment of dead bodies, including autopsies, organ donation or other procedures".

12. La exclusión por servicios profesionales ("Designated Professional Services Exclusion") contenida en el endoso CG 21 16 07 98 del contrato de seguro lee como sigue:
   "Description of Professional Services:

   …This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service".

13. Triple S proveyó inicialmente representación legal a SMU. No obstante, el 9 de octubre de 2015 Triple S informó a SMU que no continuaría ofreciéndole defensa ni proveería cubierta porque las causas de acción incluidas en la demanda estaban excluidas del Contrato de Seguro al amparo de las exclusiones por hongo o Bacteria ("Fungi or Bacteria"), por servicios provisto por profesionales de la salud ("Services Furnished by Health Care Providers"), por la de enfermedades transmisibles ("Communicable Disease"), y por la de servicios profesionales ("Designated Professional Exclusion").[14]

Inconforme con dicha determinación, SMU acude ante nos mediante recurso de *apelación* y hace los siguientes señalamientos de error:

**ERRÓ EL TPI AL APLICAR EL ESCRUTINIO INCORRECTO AL ANÁLISIS DE SI PROCEDE EXIGIR EL**

---

[14] *Íd.*, a las págs. 2458-2460.

**DEBER DE DEFENSA A UNA ASEGURADORA Y AL NO CONCEDER LA LIBERALIDAD EN LA INTERPRETACIÓN DE LAS CLÁUSULAS CONTRACTUALES A FAVOR DEL ASEGURADO.**

**ERRÓ EL TPI AL NO CONCLUIR QUE LAS EXCLUSIONES DE CUBIERTA POR "SERVICIOS PROFESIONALES" Y "SERVICIOS PROVISTOS POR PROVEEDORES DE SALUD" DE LA PÓLIZA EMITIDA POR TRIPLE S NO PUEDEN CATEGÓRICAMENTE EXCLUIR LA POSIBILIDAD DE CUBIERTA PUES, SEGÚN LA JURISRUDENCIA APLICABLE, NO TODOS LOS SERVICIOS PROVITOS POR SMU PUEDEN CLASIFICARSE COMO "SERVICIOS PROFESIONALES" Y AL NO CONSIDERAR QUE NO EXISTE PRUEBA PARA ESTABLECER QUE EXISTE UN NEXO CAUSAL ENTRE LA EXITENCIA DE LA BACTERIA ACINETOBACTER BAUMANII ("ABCX"), LA FALTA DE LIMPIEZA EN EL HOSPITAL UPR FEDERICO TRILLA ("HOSPITAL") Y QUE HUBIESE CAUSADO LA MUERTE DE LOS CAUSANTES DE LOS DEMANDANTES.**

**ERRÓ EL TPI AL NO CONSIDERAR QUE LO RESUELTO EN EL CASO RIVERA MATOS, ET AL V. TRIPLE S PROPIEDAD, INC. Y ACE INSURANCE COMPANY, 2020 TSPR 89 NO TIENE EFECTO RETROACTIVO SOBRE LA SENTENCIA, DICTADA EL 30 DE JUNIO DE 2017 DECLARANDO CON LUGAR LA SOLICITUD DE SENTENCIA SUMARIA QUE PRESENTÓ SMU Y EN CONSECUENCIA DECLARA HA LUGAR LA DEMANDA CONTRA COPARTE DE SMU, ORDENANDO A TRIPLE-S QUE PROVEA A SMU CUBIERTA DENTRO DE LOS LÍMITES DEL CONTRATO DE SEGURO Y DEFENSA: INCLUYENDO SUFRAGAR LOS GASTOS DE DEFENSA INCURRIDOS POR SMU HASTA EL MOMENTO MÁS LO GASTOS QUE SE INCURRAN POR ESTE CONCEPTO MIENTRAS CONCLUYE EL TRÁMITE JUDICIAL DE ESTE PLEITO.**

El 22 de mayo de 2025, Triple-S presentó su *Alegato de la Apelada Triple S Propiedad*. Posteriormente, el 29 de julio de 2025, este tribunal emitió una *Orden* a través de la cual le requirió a la parte Apelante que mostrase causa por la cual no debía desestimarse este recurso apelativo por ausencia de jurisdicción por incumplimiento con el Reglamento del Tribunal de Apelaciones. SMU presentó su contestación a la referida *Orden* el 1 de agosto de 2025. Adujo que había cumplido con los requerimientos del Reglamento del Tribunal de Apelaciones, particularmente la Regla 74. Asimismo, arguyó que, en caso de que este Tribunal entendiese que no había cumplido con dichas Reglas, no debía

desestimarse el recurso, pues en nuestro ordenamiento jurídico se promueve resolver los casos en sus méritos.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

-II-

**A. Sentencia Sumaria**

En nuestro ordenamiento jurídico, el mecanismo de sentencia sumaria tiene como fin aligerar la tramitación de los casos en los cuales no existe una controversia de hechos real y sustancial que requiera la celebración de un juicio en su fondo.[15] Por lo tanto, para adjudicar en los méritos una controversia de forma sumaria es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente.[16]

En *Meléndez González et al. v. M. Cuebas*[17] el Tribunal Supremo de Puerto Rico estableció el estándar específico que debe utilizar el Tribunal de Apelaciones al revisar una sentencia sumaria.

En primer lugar, por encontrarse en la misma posición que el Tribunal de Primera Instancia, este Tribunal debe regirse por la regla 36 de Procedimiento Civil al momento de revisar este tipo de solicitudes. Es decir, aplicarán los mismos criterios que esa regla y la

---

[15] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[16] *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019); *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224-225 (2015).
[17] 193 DPR 100 (2015).

jurisprudencia le exigen al foro primario. Evidentemente, el foro apelativo estará limitado, en la medida en que no puede considerar evidencia que las partes no presentaron ante el foro de instancia, toda vez que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a la parte que se opuso a la solicitud de sentencia sumaria en el foro primario.

Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que, tanto la Solicitud de Sentencia Sumaria, como la Oposición, cumplan con los requisitos de forma definidos en la Regla 36 de Procedimiento Civil y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*[18].

Un tercer factor que se debe considerar es si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil. A tales efectos, deberá exponer los hechos materiales en controversia y aquellos que están incontrovertidos. Dicha determinación podrá hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Finalmente, de encontrar que los hechos materiales están realmente incontrovertidos, el foro apelativo procederá a revisar de *novo* si el Tribunal de Primera

---

[18] 189 DPR 414 (2013).

Instancia aplicó correctamente el Derecho a la controversia.[19]

### B. Contratos de Seguros

El Art. 1.020 de la Ley Núm. 77 de 19 de junio de 1957, conocida como el *Código de Seguros de Puerto Rico* (Código de Seguros)[20] define el contrato de seguro como aquel mediante "el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[21] Este pacto se configura en un documento escrito conocido como póliza, en el cual se plasman los términos que rigen el acuerdo.[22] Particularmente, en este tipo de contrato, el asegurador asume unos riesgos a cambio de una prima y, así, se compromete a proteger económicamente al suscriptor en caso de que ocurra el evento incierto contemplado en el acuerdo.[23]

Cuando un comprador o potencial asegurado hace una solicitud para adquirir una cubierta, la aseguradora tiene a su bien aceptar, rechazar o realizar una contraoferta.[24] En el momento en que el comprador adviene en conocimiento de que su solicitud fue finalmente aceptada, la relación contractual entre el asegurado y la aseguradora queda perfeccionada.[25] Asimismo, la expedición de la póliza conlleva el efecto de que el asegurado quede formalmente advertido de que la aseguradora ha aceptado su petición.[26]

---

[19] *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015). (citas omitidas).
[20] 26 LPRA sec. 101 *et seq*.
[21] 26 LPRA sec. 102.
[22] *Maderas Tratadas v. Sun Alliance et al*, 185 DPR 880, 897 (2012).
[23] *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009).
[24] R. Cruz, *Derecho de Seguros*, Publicaciones JTS, 1999, pág. 83.
[25] *Id.*, pág. 84.
[26] *Id.*, pág. 82.

Al igual que todo contrato, el contrato de seguro constituye la ley entre las partes.[27] Sin embargo, se ha resuelto que, por tratarse de un contrato de adhesión, su interpretación debe ser una liberal a favor del asegurado.[28] No obstante, esta norma no tiene el efecto de obligar a los tribunales a interpretar a favor del asegurado una cláusula que claramente le da la razón al asegurador cuando su significado y alcance sea claro y libre de ambigüedad.[29]

En reiteradas ocasiones el Tribunal Supremo ha sostenido que si los términos, las condiciones y las exclusiones de un contrato de seguro son claros, específicos y libres de ambigüedades, se hará valer la clara voluntad de los contratantes.[30] Los términos de un contrato son claros cuando "por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación".[31] En ausencia de ambigüedades, las cláusulas del contrato son obligatorias, pues no se puede admitir una interpretación que vulnere el claro propósito y voluntad de los contratantes.[32]

En atención a lo anterior, se ha reconocido que los términos de las pólizas de seguro "deben ser generalmente atendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical,

---

[27] *Echandi Otero v. Stewart Title*, 174 DPR 355, 369 (2008).
[28] *Id.*, a las págs. 369-370.
[29] *Quiñones López v. Manzano Pozas*, 141 DPR 139, 155 (1996); *A.A.A. v. Librotex Inc.*, 141 DPR 375, 380-381 (1996).
[30] *Echandi Otero v. Stewart Title, supra*, pág. 1581; *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 724 (2003); *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003).
[31] *Sucn. Ramírez v. Tribl. Superior*, 81 DPR 357, 361 (1959).
[32] *Quiñones López v. Manzano Pozas, supra*, pág. 156; *López v. Atlantic Southern Ins. Co., supra*, pág. 569.

sino al uso general y popular de las voces".[33] Así, se le confiere al asegurado el derecho a confiar en la cubierta que se le ofrece tras una lectura de sus cláusulas conforme al sentido popular de sus palabras.[34] Sin embargo, si de la póliza se desprende un significado particular para determinado término, este se aplicará a tenor con lo convenido por las partes.[35] Consecuentemente, la labor de los tribunales consiste en buscar el sentido y significado que a las cláusulas contenidas en la póliza le daría una persona de inteligencia promedio que se apreste a adquirirla.[36]

Ahora bien, la interpretación que de una póliza de seguro se realice tiene que ser cónsona con la norma de hermenéutica que impone el Art. 11.250 del Código de Seguros, el cual dispone que:

> Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta.[37]

El texto referido establece que la ampliación, extensión o modificación del contrato de seguro se da por aditamento, endoso o solicitud adherida a la póliza para formar parte de esta, y debe interpretarse de manera global a partir del conjunto total de sus términos y condiciones.[38] De lo anterior se desprende que al interpretar una póliza, ello debe realizarse conforme al propósito de esta, a saber, ofrecer protección al

---

[33] *Morales Garay v. Roldan Coss*, 110 DPR 701, 706 (1981).
[34] *Echandi Otero v. Stewart Title*, *supra*, pág. 1582; *Domínguez v. GA Life*, 157 DPR 690, 699-700 (2002).
[35] *S.L.G. Francis-Acevedo v. SIMED*, *supra*, pág. 387.
[36] *Coop. Ahorro y Créd. Oriental v. S.L.G.*, *supra*, pág. 723; *Quiñones López v. Manzano Pozas*, *supra*, pág. 155.
[37] 26 LPRA sec. 1125.
[38] *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 691 (2001); *Quiñones López v. Manzano Pozas*, *supra*, págs. 154-155.

asegurado.[39] Por esto, no se favorecerán interpretaciones sutiles que le permitan al asegurador evadir su responsabilidad.[40]

Además, es cardinal también el Art. 11.180 del Código de Seguros, el cual en su primer inciso señala que "[l]a póliza deberá contener todo el contrato … [ya que n]ingún convenio que esté en conflicto con el contrato de seguro o que lo enmiende o amplíe será válido a menos que fuere por escrito y se hiciere formar parte de la póliza".[41] Como puede colegirse de los artículos del Código de Seguros antes citados, cualquier alteración a la póliza se tiene que adherir y hacer formar parte de esta.

Fundamentado en el referido Art. 11.180, el Tribunal Supremo ha establecido que el Código de Seguros "interesa un contrato de seguro completo en sí mismo, que contenga todo lo acordado entre las partes y que sea por escrito".[42] Así, el contrato de seguro puede ser objeto de todas las alteraciones o modificaciones que se estimen convenientes siempre que las partes consientan y se haga constar expresamente en el contrato o se incorpore a la póliza.[43]

En consecuencia, existen varias alternativas para modificar una póliza de seguro válidamente de manera que las alteraciones que se pretenden surtan efecto jurídico. Para esto, es necesario que estas se realicen mediante un endoso al margen o al dorso de la póliza, por medio de inserción de palabras en el cuerpo del

---

[39] Íd.
[40] Coop. Ahorro y Créd. Oriental v. S.L.G., supra, pág. 723; Quiñones López v. Manzano Pozas, supra, pág. 155.
[41] 21 LPRA sec. 1118(1).
[42] The London Assurance v. Tribunal Superior, 95 DPR 305, 310 (1967).
[43] S.L.G. Francis-Acevedo v. SIMED, supra, pág. 389.

contrato, por un documento aparte que exponga que se adjunta y se hace formar parte de la póliza o mediante la redacción de un nuevo contrato que recoja el cambio convenido.[44]

Ahora bien, con respecto a las cláusulas de exclusión, el Tribunal Supremo de Puerto Rico ha señalado que son aquellas que "limitan la cubierta provista por un seguro al exceptuar determinados eventos, riesgos o peligros".[45] Generalmente no se favorecen y deben interpretarse restrictivamente a favor del asegurado.[46] Sin embargo, si las cláusulas de exclusión aplican diáfanamente a una situación en particular, la aseguradora no está obligada a responder por los riesgos expresamente excluidos.[47] Ahora bien, cabe destacar que el asegurado debe establecer que su reclamación está comprendida en las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene el peso de la prueba para demostrar que aplica alguna cláusula de exclusión.[48]

Nuestro más alto foro ha resuelto que, cuando un contrato de seguro carece de una definición del término "servicios profesionales" como parte de una cláusula de exclusión, se usará su acepción legal.[49] Un servicio profesional "conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento,

---

[44] *Id.*, a la pág. 390.
[45] *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 279 (2015); *Maderas Tratadas v. Sun Alliance et al, supra,* a las págs. 899-900; *Echandi Otero v. Stewart Title*, *supra*, a las págs. 370-371.
[46] *Rivera Matos et al. v. Triple-S et al.*, *supra,* a la pág. 1021; *Viruet et al. v. SLG Casiano-Reyes*, *supra*, a la pág. 279; *Maderas Tratadas v. Sun Alliance et al, supra,* a las págs. 899-900; *Echandi Otero v. Stewart Title*, *supra*, a las págs. 370-371.
[47] *Íd.*
[48] *Rivera Matos et al. v. Triple-S et al.*, *supra*, a la pág. 1022.
[49] *Rivera Matos et al. v. Triple-S et al.*, *supra*, a la pág. 1022; *Viruet et al. v. SLG Casiano-Reyes, supra*, a la pág. 280.

labor o destreza especializada".[50] Es menester destacar, que las habilidades que requiere un servicio profesional son esencialmente intelectuales o mentales, no físicas o manuales.[51] El concepto "profesional" implica "el uso de discernimiento, según criterios inculcados mediante estudios o a base de algún conocimiento especializado".[52] La exclusión de servicios profesionales no se limita a profesionales tradicionales como abogados, médicos, arquitectos e ingenieros.[53]

Por otra parte, es una práctica común que los contratos de seguros contengan cláusulas que obliguen a la aseguradora a proveer representación legal al asegurado.[54] Vale resaltar que, como el objetivo de un contrato de seguro es proteger al asegurado, el deber de representación legal de este es parte primordial de la cubierta contratada con la aseguradora.[55] Es norma establecida en nuestro ordenamiento jurídico, que el deber de una aseguradora de proveer representación legal a su asegurado es más extenso que la obligación de indemnizar por daños.[56] Este deber existe aun cuando la aseguradora no esté obligada a indemnizar por los daños causados por el asegurado a un tercero.[57] Si hay dudas sobre la existencia de este deber, se resolverá a favor del asegurado.[58]

---

[50] *Íd.*
[51] *Íd.*
[52] *Íd.*
[53] *Íd.*
[54] *Echandi Otero v. Stewart Title*, *supra*, a la pág. 371.
[55] *Echandi Otero v. Stewart Title*, *supra*, a la pág. 371; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 893 (1994); *Pagán Caraballo v. Silva, Ortiz*, 122 DPR 105, 110 (1988).
[56] *Echandi Otero v. Stewart Title*, *supra*, a la pág. 371; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, a la pág. 895; *Pagán Caraballo v. Silva Ortiz*, *supra*, a las págs. 111-112.
[57] *Echandi Otero v. Stewart Title*, *supra*, a la pág. 371; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, a la pág. 895; *Pagán Caraballo v. Silva Ortiz*, *supra*, a la pág. 112.
[58] *Echandi Otero v. Stewart Title*, *supra*, a las págs. 371-372; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, a la pág. 895; *Pagán Caraballo v. Silva Ortiz*, *supra*, a la pág. 112.

Primeramente, el deber de la aseguradora de defender al asegurado de causas de acciones bajo el contrato de seguro se determina por las alegaciones de la demanda.[59] Las alegaciones tienen que describir hechos que estén comprendidos dentro de la cubierta de la póliza, sin importar cuál sea la responsabilidad que finalmente tenga el asegurado con el demandante.[60] Así pues, el Tribunal Supremo ha establecido que:

> [L]a obligación de la compañía aseguradora de asumir la representación legal de su asegurado surgirá cuando de una interpretación liberal de las alegaciones surja la *posibilidad* de que el asegurado esté protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso. **Ahora bien, si la cubierta de póliza claramente excluye los daños reclamados en las alegaciones, no podrá imponerse a la aseguradora el deber de defender.**[61]

Los tribunales deben evaluar, caso a caso, las alegaciones del asegurado y contrastarlas con las cláusulas de la póliza, para poder concluir si la aseguradora tiene algún deber de brindar representación legal al asegurado.[62]

### C. Aplicación Retroactiva de las Decisiones Judiciales

Las decisiones judiciales pueden tener tanto efecto retroactivo como efecto prospectivo, pues "la absoluta retroactividad sería la muerte de la seguridad y la … confianza pública, y la absoluta irretroactividad sería la muerte del desenvolvimiento del derecho".[63] El Tribunal Supremo de Puerto Rico ha establecido que, como regla general, los precedentes tienen un efecto

---

[59] *Echandi Otero v. Stewart Title*, *supra*, a la pág. 372; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, a la pág. 896.
[60] *Íd.*
[61] *Echandi Otero v. Stewart Title*, *supra*, a la pág. 372. *Énfasis suplido*.
[62] *Íd.*
[63] *Quiles Rodríguez v. Supte. Policia*, 139 DPR 272, 277 (1995).

retroactivo.[64] Sin embargo, nuestro máximo foro ha señalado que son los mismos tribunales quienes deberán decretar si la decisión judicial tendrá o no tendrá un efecto retroactivo.[65] Al momento de tomar esta decisión, las consideraciones de política pública y orden social son de vital importancia, pues el objetivo principal del Tribunal debe ser la concesión de remedios justos y equitativos "que respondan a la mejor convivencia social".[66]

Ahora bien, el Tribunal Supremo ha determinado que los siguientes criterios deberán ser considerados al instante de decidir si una norma jurisprudencial aplica de manera retroactiva o prospectiva: 1) el propósito que persigue la nueva regla a los fines de determinar si su retroactividad lo adelanta; 2) la confianza que se depositó en la norma antigua; y 3) el efecto de la nueva norma en la administración de la justicia.[67] No obstante, esta decisión dependerá de las consideraciones sociales, en virtud de los hechos y circunstancias particulares de cada caso.[68]

También, la aplicación retroactiva de las determinaciones judiciales puede limitarse de modo que no se afecten las sentencias que sean finales y firmes.[69] El Tribunal Supremo de Puerto Rico ha resuelto que una nueva norma puede tener un efecto prospectivo en aquellas instancias en que la decisión impone un requisito de cumplimiento estricto.[70] Por otra parte, cuando se trata de un requisito o exigencia

---

[64] *Rosario Domínguez et al v. ELA et al*, 198 DPR 197 (2017).
[65] *Quiles Rodríguez v. Supte. Policía, supra.*
[66] *Íd.*, a la pág. 277.
[67] *Íd.*
[68] *Íd.*
[69] *Rosario Domínguez et al v. ELA et al, supra,* a la pág. 216.
[70] *Íd.*

jurisdiccional, que emana de una disposición meridianamente clara y libre de dudas, la decisión puede aplicarse de manera retroactiva.[71]

-III-

En el presente caso, el Apelante nos solicitó la revocación de la *Sentencia Sumaria Parcial* emitida por el foro de instancia el 26 de febrero de 2025. En ella, el foro recurrido declaró Ha Lugar la *Moción de Reconsideración* presentada por Triple-S el 27 de julio de 2017. Así, dejó sin efecto la demanda contra coparte instada por SMU y la *Sentencia Parcial* que emitió el 30 de junio de 2017. El Tribunal de Primera Instancia concluyó que no existía por parte de Triple-S el deber de proveer defensa a SMU, pues entendió que las alegaciones de la demanda de daños están excluidas de la cubierta del Contrato de Seguro en virtud de las cláusulas de exclusión de Servicios Profesionales y Servicios Ofrecidos por Proveedores de la Salud.

En primer lugar, atenderemos los primeros dos errores de manera conjunta por estar relacionados entre sí. El Apelante señala que el foro de instancia erró al no haber interpretado las cláusulas del contrato de seguro a favor del asegurado, SMU. Añade además, que erró el foro de instancia al concluir que las cláusulas de exclusión por Servicios Profesionales y Servicios Provistos por Proveedores de la Salud pueden excluir categóricamente la posibilidad de cubierta, pues entiende que de acuerdo con la jurisprudencia aplicable, no todos los servicios provistos por SMU son profesionales, y erró también al no considerar que no

---

[71] *Íd.*, a la pág. 217.

hay prueba para establecer que existe un nexo causal entre la presencia de la bacteria en el Hospital UPR, la falta de limpieza en este y los fallecimientos. No nos convence su postura. Veamos.

Como indicáramos anteriormente en la discusión del Derecho, es cierto que, en materia de Contratos de Seguros, como se trata de un contrato de adhesión, sus cláusulas deben interpretarse de manera liberal a favor del asegurado. Sin embargo, esta norma no obliga a los tribunales a interpretar a favor del asegurado una cláusula que le da la razón al asegurador cuando su significado y alcance sea claro y libre de ambigüedad. Asimismo, señalamos que, aunque las cláusulas de exclusión no se favorecen y deben ser interpretadas a favor del asegurado, si queda meridianamente claro que una cláusula de exclusión aplica a una situación en particular, la aseguradora no está obligada a responder por los riesgos expresamente excluidos.

Mencionamos en adición, que cuando un contrato de seguro carece de una definición del término "servicios profesionales" como parte de una cláusula de exclusión, se utiliza su acepción legal. Como discutido, un servicio profesional "conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializada".[72] Un servicio profesional requiere llevar a cabo tareas o habilidades que son esencialmente intelectuales o mentales, no así físicas o manuales. Por otro lado, el deber de la aseguradora de proveer representación legal a su asegurado se determina por las alegaciones de la

---

[72] *Rivera Matos et al. v. Triple-S et al.*, *supra*, a la pág. 1022; *Viruet et al. v. SLG Casiano-Reyes*, *supra*, a la pág. 280.

demanda. Las alegaciones tienen que describir hechos que estén comprendidos dentro de la cubierta de la póliza, indistintamente de cuál sea la responsabilidad final del asegurado para con el demandante. Ahora, si la cubierta de póliza claramente excluye los daños reclamados en las alegaciones, no podrá imponerse a la aseguradora el deber de defender.

En este caso, no advertimos que el Tribunal de Primera Instancia haya fallado en interpretar las cláusulas de la póliza a favor del apelante. Surge de la *Sentencia Sumaria Parcial* apelada que el foro recurrido realizó el análisis del Contrato de Seguro suscrito por las partes conforme a Derecho. En lo pertinente, se desprende de las alegaciones de las demandas enmendadas que, se describió al co-demandado y aquí Apelante, Servicios Médicos Universitarios, Inc., como los dueños, manejadores y operadores del Hospital UPR. Además, el Apelante se autodenominó en las contestaciones a las Demandas Enmendadas como "administradora y operadora del Hospital UPR Dr. Federico Trilla".[73] En adición, los demandantes alegaron en las demandas enmendadas que, entre otros, la Junta de Directores de SMU y SMU incumplieron con los estándares de cuidado requeridos por la "Joint Commission for Accreditation of Hospitals".[74] Argumentaron también, que la Junta de Gobierno de la UPR y la Junta de Directores de SMU no asumieron un rol activo en velar y exigir que los servicios provistos por el Hospital UPR fuesen de calidad.[75]

---

[73] Véase Apéndice del recurso de *apelación*, a las págs. 749-919.
[74] *Íd.*, a las págs. 461-579.
[75] *Íd.*

Con respecto a SMU y su responsabilidad, varias de las alegaciones fueron, entre ellas: 1) que el Director Médico no estuvo presente en las reuniones de la Junta de Gobierno de la UPR y la Junta de Directores de SMU; 2) que no se discutieron los patrones de resistencia de la bacteria ABCx, como tampoco se divulgó el aumento de infecciones de este tipo desde el año 2012, y tampoco se discutió el antibiograma y el patrón de resistencia y susceptibilidad, cuya responsabilidad es de la Junta de Gobierno UPR y la Junta de Directores de SMU; 3) que la Junta de Directores de SMU y la Junta de Gobierno UPR fue informada del brote pero no hicieron nada al respecto, y a pesar de conocer esto, dejaron de reunirse con frecuencia y dejaron de discutir el asunto; 4) que los informes de la Comisión Independiente concluyó que la Junta de Gobierno UPR y la Junta de Directores de SMU eran responsables por velar y exigir el cumplimiento de las normas y requerimientos que velan por el mejor funcionamiento del hospital; 5) que un equipo de trabajo liderado por Enrique Vicens, el Administrador de Hospitales, encontró que las fallas principales que propiciaron el brote de la bacteria ABCx fue la falta de vigilancia y supervisión administrativa, la ausencia de personal especializado, y brechas en la cadena de control de infecciones; 6) y que, entre otros, SMU y la Junta de Directores de SMU, incumplieron con el Reglamento del Departamento de Salud 7604 del 5 de noviembre de 2008, que requiere la notificación obligatoria de los hospitales al Departamento de Salud de infecciones nosocomiales que sean detectadas.[76]

---

[76] *Íd.*

Al aplicar las alegaciones de las demandas enmendadas a las cláusulas contractuales de la póliza, concluimos que no cabe duda que las funciones descritas en ellas son propias de aquellas realizadas a través de servicios profesionales, a saber: manejar, administrar, supervisar y operar un hospital en su totalidad; llevar a cabo reuniones y discutir asuntos tan importantes como el brote de una bacteria, las diferentes formas de enfrentar este problema y sus posibles soluciones; el cumplimiento con cuerpos reglamentarios. Realizar estas labores conlleva implica emplear habilidades que superan las tareas físicas o mecánicas. Es decir, realizar estas labores conlleva realizar tareas que son, por su propia naturaleza, intelectuales o mentales.

La cláusula de exclusión de Servicios Provistos por Profesionales de la Salud también es de aplicación al caso ante nos. Todas las alegaciones de las demandas enmendadas tienen un denominador común: el ingreso al hospital de los seis (6) pacientes para recibir tratamiento médico, culminó en el fallecimiento de cada uno de ellos tras contagiarse con la Bacteria ABCx mientras se encontraban recluidos en el Hospital UPR.[77]

Ahora bien, como tercer señalamiento de error, SMU plantea que lo resuelto en *Rivera Matos et al. v. Triple-S et al*, 204 DPR 1010 (2020) no tiene efecto retroactivo, por lo que erró el foro recurrido al aplicarlo al presente recurso. No le asiste la razón. Veamos.

Explicamos que las decisiones judiciales pueden tener tanto efecto retroactivo como efecto prospectivo. Son los propios tribunales quienes decidirán si la

---

[77] *Íd.*

decisión judicial tendrá o no tendrá un efecto retroactivo. Cabe destacar que criterios como el propósito que persigue la nueva norma, la confianza depositada en la norma anterior, su efecto en la administración de la justicia, y si afectan sentencias que sean finales y firmes, deberán ser considerados al decidir sobre su aplicación prospectiva o retroactiva. Todo dependerá de las circunstancias particulares de cada caso.

En este caso, y de acuerdo con el Derecho aplicable discutido, no advertimos que el foro recurrido se haya excedido en su función y discreción al aplicar lo resuelto en *Rivera Matos et al. v. Triple-S et al*, 204 DPR 1010 (2020) de manera retroactiva a la controversia que nos ocupa.

Luego de un análisis sosegado del legajo apelativo ante nos, concluimos que resulta forzoso confirmar la determinación del foro recurrido.

-IV-

A la luz de los fundamentos antes expresados, se ***confirma*** la *Sentencia Sumaria Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones